## MEXIA *v.* OLIVER.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF TEXAS.

No. 182. Submitted March 28, 1893. — Decided April 17, 1893.

In Texas, a married woman, who owns land in her own right, cannot convey it by her husband, as her attorney, under a power of attorney from her to him, without herself signing and acknowledging privily the deed, although her husband joins in the deed individually.

Where a suit is brought in Texas by a married woman and her husband, to recover possession of land, her separate property, and the petition is endorsed with a notice that the action is brought as well to try title as for damages, it is error to admit in evidence against the plaintiffs such a power of attorney and deed, although there is an issue as to boundary and acquiescence and ratification.

It does not appear beyond a doubt that such error could not prejudice the rights of the plaintiffs.

THE case is stated in the opinion.

*Mr. William S. Flippin* and *Mr. A. H. Evans* for plaintiffs in error.

*Mr. S. L. Samuels* and *Mr. A. C. Prendergast* for defendant in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is an action at law, brought in the Circuit Court of the United States for the Northern District of Texas, by Sarah R. Mexia and her husband, Enrique A. Mexia, citizens of Mexico, against T. J. Oliver, a citizen of Texas, for the possession of a piece of land. The "first amended original petition" in the suit, filed November 30, 1888, is endorsed with a notice to the defendant that the action is brought as well to try title as for damages. The petition states that on January 1, 1878, the plaintiffs were seized and possessed in fee, in right of said Sarah R. Mexia, of the following described tract of land, situated in Limestone County, Texas, being some 4000 acres, more or less, out of 11 leagues of the land granted originally to Pedro Varella, "beginning at a stake and mound on the eastern boundary of the Pedro Varella 11-league grant, 2253 varas south, 45° east, from the northeast corner of said 11-league grant, said stake and mound being also the southeast corner of a 6000-acre tract in the name of Jose M. Cabellero out of said 11-league grant, as the same was originally surveyed and established in June, 1855, by G. H. Cunningham, surveyor, at the instance of E. A. Mexia, agent for J. M. Cabellero and plaintiffs' vendors, thence south 45° west with the south boundary line of said 6000-acre tract, . . . (according to a block of surveys made by G. H. Cunningham in 1856 in sectionizing and subdividing said 11-league grant, and set apart to plaintiff Sarah R. Mexia by deed of partition between Adelaide M. Hammekin, George L. Hammekin, Sarah R. Mexia and E. A. Mexia dated March 30, 1874;) " thence proceeding with the boundary around said land to the place of beginning, " said boundaries including sections Nos. 1, 2, 3, 4, 5, and a part of section No. 6, of the subdivision and partition of the said Pedro Varella 11-league grant, as shown on the records of the said Limestone County." The petition sets forth also that on February 11, 1850, " Adelaide M. Hammekin, joined by her husband George L. Hammekin, being at that time the owners of said 11-league grant, made, executed and delivered to one Jose M. Cabellero a conveyance for 6000

acres of said 11-league grant, out of the northeast corner of same, before any actual survey was made of said 6000-acre tract, and that the same was never actually surveyed on the ground until the month of June, 1855, at which time said 6000-acre tract was actually surveyed on the ground and cut off from said 11-league grant, and the south or southwest boundary line thereof was well established on the ground in accordance with the field-notes as hereinbefore set forth, and the same has ever since been held and regarded and acquiesced in as the south boundary of said 6000-acre tract and as the division line between the same and the remainder of said 11-league grant on the south and west thereof, and from that time to the present said line and survey has been acquiesced in by the adjacent owners of the land north and south of said line"; that said survey was made, and said line thus established, by G. H. Cunningham, then surveyor of the land district in which said land was situated, and this was done by request and authority of said J. M. Cabellero and the said Hammekins, and said survey and lines were afterwards ratified, and ever since acquiesced in, by them and their vendees; that such title as the defendant claims under is derived from Cabellero under said conveyance for 6000 acres; that the defendant will claim and insist in this cause that the south boundary line of said 6000-acre tract, in the name of Cabellero, should be at a point about 277 varas further south than as heretofore established and as claimed by the plaintiffs; that on January 1, 1878, the defendant illegally entered on the land and ejected the plaintiffs therefrom, to their damage in the sum of $10,000; and that the land claimed is of the value of $20,000. The petition prays judgment for the land, damages and costs, for a writ of possession, and for other relief.

The defendant filed a "first amended original answer" on April 17, 1889, by which he demurred to the plaintiffs' first amended original petition as insufficient in law, denied all the allegations of the petition, pleaded not guilty, and alleged that he had been in quiet, peaceable, continuous and adverse possession for more than three years before the filing of the suit, of so much of the land described in the petition as was

included within the boundaries following, to wit: "In Lime-stone County, about 6 miles above the town of Springfield, on the northern or left of the river Navasota, being a part of the 11-league grant by the States of Coahuila and Texas to Pedro Varella, and commencing on the left bank of the eastern (or northern) branch of the Navasota at the point where the original line of said 11-league grant from the second to the third corners crossed the said creek; thence N. 45° E., following the original line of said 11-league grant, to the original 3rd corner; thence S. 45° E. two thousand five hundred and thirty (2530) varas, following the original line of the said 11-league grant; thence S. 45° W., being a line paral-lel with the first line of this survey, to the left bank of the Navasota; thence up said river to the beginning"; that, as to all not included in said boundaries, he did not set up any claim; that he pleaded the three-years and the five-years statutes of limitation; that he and those whose estate he had in the lands sued for had adverse possession of the land described in his plea of three years' limitation, for one year next before the commencement of the suit, claiming the land in good faith; that he and they had made permanent and valuable improvements thereon, to the amount of $5000, which he asked to have valued and allowed to him under the statute; and that, as to all land not included in the bounda-ries given in the answer, he made disclaimer.

The answer further alleged, that on July 27, 1874, he pur-chased from Mrs. Maria Dolores Felicite Conti, the only daughter and only heir of Jose M. Cabellero, the land de-scribed in the answer, paying therefor to her $5000 cash, in gold, and received a deed, with said field-notes from her and her husband J. M. Conti; that, if the Hammekins and said Cabellero ever agreed that the said 6000-acre tract should be surveyed, and the same was so surveyed as to make its southern boundary 277 varas farther north than the southern boundary as called for by said deed from the Hammekins to Cabellero, and they afterwards acquiesced in and ratified the same, which is not admitted but expressly denied, then the defendant avers that, at and before the time he paid such

purchase money and received the deed from Mr. and Mrs. Conti, he had no notice, actual or constructive, of such agreement, survey or ratification of the survey, nor that the Hammekins or the plaintiffs claimed any right to, or interest in, said 6000-acre tract or any part thereof, as set out by metes and bounds in the deed to Cabellero; that the defendant was a *bona fide* purchaser for value of the land as so described, and believed that he was acquiring the full and complete title to the land as described in the deed to Cabellero, and believed that he had a right to rely on the description of said land, as set out in said deed, as correct; that on ———, 187—, he learned that Whitfield Scott claimed to have title to said land, derived from the Hammekins, and he purchased said title from Scott, paying valuable consideration therefor, and without notice, actual or constructive, at the time he paid such consideration or received his deed from Scott, that any one else claimed title to any part of said land, and without notice, actual or constructive, of the agreement, survey or ratification set out in the answer; that he received from Scott a deed with the same field-notes as set out in said deed to Cabellero; and that, in purchasing from Scott, he was, as to the claims set up by the plaintiffs, a *bona fide* purchaser for a valuable consideration.

The plaintiffs filed their "first supplemental petition," which demurred to the defendant's first amended original answer, filed April 17, 1889, as insufficient in law, and denied all the averments contained in said answer, and in replication to the defendant's averments and claims of title under the statutes of limitation of three and five years, said that if the defendant had possession, under title or color of title, of any of the land described in the petition, for three or five years before the suit was instituted, (all of which the plaintiffs denied,) such possession was no bar, because ever since the defendant acquired title, color of title or possession, the plaintiff Sarah R. Mexia had been the lawful wife of the other plaintiff, and had been a married woman for ten years before the institution of the suit, and for several years before the defendant acquired any title, color of title or possession of any of the land de-

scribed in the petition; and that she was still such lawful wife of her co-plaintiff. They prayed judgment as in their petition.

No disposition appears to have been made of the demurrer to the petition or the demurrer to the answer; but the case was tried in April, 1889, before the court and a jury. A verdict was found for the defendant, whereupon a judgment was entered that the plaintiffs take nothing by their suit, and that the defendant recover his costs, with execution upon either the common property of the wife and the husband or the separate property of the wife. The plaintiffs have sued out a writ of error from this court.

There is a bill of exceptions, which sets forth that on the trial the defendant offered to introduce in evidence a power of attorney executed by Adelaide M. Hammekin to her husband, George L. Hammekin, empowering him to dispose of, in her name, certain real property belonging to her separately; that the defendant also offered to introduce in evidence a deed to the lands in controversy, made by said George L. Hammekin, as attorney for his wife and personally for himself, in which deed he acted for his wife under said power of attorney, and conveyed the 6000-acre Cabellero tract of land, by metes and bounds, as claimed by the defendant, to Whitfield Scott, on March 18, 1875, and a deed from Scott to the defendant, dated March 20, 1875, conveying the same land conveyed to Scott by George L. Hammekin for himself and wife; and that the plaintiffs objected to the introduction of said testimony, because: "First. Said power of attorney did not vest in the husband any authority to act for the wife in executing deeds to her separate property, such a power being inconsistent with and in contravention of our statute requiring the signature and privy acknowledgment of the wife joined by her husband to convey such property. 2d. The deed to Whitfield Scott executed by George L. Hammekin, for himself and as attorney-in-fact for his wife, was without authority of law, was not privily acknowledged by the wife, as is required in cases of the conveyance of the separate property of the wife, and conveyed none of her title. 3d. The deed

from Whitfield Scott to defendant T. J. Oliver, being based upon the foregoing instruments, should fail with them, and was not evidence of any title." The court overruled the objections and admitted the instruments in evidence, and the plaintiffs excepted. After the verdict was rendered, the plaintiffs appear to have moved the court to set aside the verdict and to grant a new trial, for the following reasons: "1. Said verdict is contrary to the law in this case as given in charge to the jury by the court, and is contrary to the evidence in the case of all the legitimate positive testimony in the case showing clearly and beyond a doubt that the lower line of the Cabellero 6000-acre tract of land was actually run upon the ground and marked off by the surveyor, G. H. Cunningham, in 1855, and that said line was subsequently acquiesced in by said Cabellero and the Hammekins, the adjacent owners of the lands on both sides of said line, as the true division line between said tracts. 2. Because the court erred in admitting in evidence over plaintiffs' objections the power of attorney made by Adelaide M. Hammekin to her husband, Geo. L. Hammekin, authorizing him to act for her in the sale and disposition of her real property, and in admitting in evidence over plaintiffs' objection the deed from said Adelaide M. Hammekin, acting by her said husband as attorney-in-fact, to Whitfield Scott, conveying the land here in controversy, said power of attorney being in contravention of the policy of our laws as decided by our courts, and said deed, under our said decisions, being insufficient to bind a married woman or to convey her separate property, having never been privily acknowledged by her. 3. The court erred in permitting the defendant Oliver and the witness Roberts to testify as to lengths of the various section lines of Pedro Varella eleven-league section, said proof being wholly immaterial to the ascertainment of whether a line had actually been run and acquiesced in by the adjacent owners, as claimed by plaintiffs, but, on the contrary, said proof tending to confuse the minds of the jurors and cause them to consider whether plaintiffs had their quantity of land in the various sections, instead of the true location of the division lines between the Cabellero

tract and the balance of the eleven leagues." The record does not show that any disposition was made of that motion; nor is it shown by the record why the court made the rulings which it did make. We are furnished with a brief for the defendant.

It is assigned as error that the court allowed the introduction in evidence of the power of attorney from Mrs. Hammekin to her husband, of the deed to Scott by the latter, acting for himself and as agent for his wife, and of the deed from Scott to the defendant, because, "1, said power of attorney from Adelaide M. Hammekin to her husband, Geo. L. Hammekin, could not authorize him to act for her and as her agent in conveying her separate property, said instrument being void under the statute and decisions of Texas requiring the privy acknowledgment of married women to transfers of their separate real property; 2, the deed from Geo. L. Hammekin, acting for himself and wife, to W. Scott, not being signed by her and acknowledged by her privily and apart from her said husband, did not, under said statute and decisions, convey her separate property; and, 3, said deed from Scott to defendant, being based on the foregoing invalid instruments, must fall with them."

The location of the south boundary line of the 6000-acre tract, (out of the northeast corner of the 11-league grant to Varella,) conveyed by Mrs. Hammekin and her husband in 1850 to Cabellero, appears to be the issue in the action; and the defendant claims in accordance with the call in that deed. The plaintiffs claim that, at the time of the sale of the land to Cabellero, it had not been surveyed; that there was no survey of it until June, 1855, when it was surveyed and marked on the ground by the Hammekins and Cabellero, the south boundary line being at a distance of 2253 varas south, 45° east, from the northeast corner of the 11-league grant; and that the line thence south, 45° west, was thereafter recognized by the Hammekins and Cabellero as the true south boundary line of the Cabellero tract, and its location there was acquiesced in by the then adjacent owners of the lands; that the land south of that line was sectionized for the

Hammekins in 1856, by Cunningham, the same surveyor who established the line for the Hammekins and Cabellero in 1855 ; that, in sectionizing, he began section No. 1 at the southeast corner of the Cabellero tract, at a point in the eastern boundary line of the 11-league grant, 2253 varas from the northeast corner of that grant; and that all the sections lying south of said 6000-acre tract, being sections 1, 2, 3, 4, 5 and part of 6, were set apart to the plaintiffs by deed of partition between them and the Hammekins, dated March 30, 1874.

The defendant claims the 6000-acre tract in accordance with the calls in the original deed conveying it from the Hammekins to Cabellero, in 1850; and alleges that he acquired title to it, first, through the deed to him from Mrs. Conti, dated July 27, 1874, and, second, through the deed from the Hammekins to Scott and that from Scott to the defendant, dated respectively March 18 and 20, 1875.

Article 559 of Sayles' Civil Statutes of Texas reads as follows: " The husband and wife shall join in the conveyance of real estate, the separate property of the wife ; and no such conveyance shall take effect until the same shall have been acknowledged by her privily and apart from her husband before some officer authorized by law to take acknowledgments to deeds for the purpose of being recorded and certified to in the mode pointed out in chapter two, title lxxxvi [title 86]." Title 86, chap. 2, art. 4310, provides as follows : " No acknowledgment of a married woman to any conveyance or other instrument purporting to be executed by her shall be taken unless she has had the same shown to her, and then and there fully explained by the officer taking the acknowledgment, on an examination privily and apart from her husband ; nor shall he certify to the same unless she thereupon acknowledges to such officer that the same is her act and deed, that she has willingly signed the same, and that she wishes not to retract it." Art. 4311 makes requirements as to the certificate, and Art. 4313 prescribes the form of certificate of acknowledgment by a married woman.

Art. 559 has been interpreted by the Supreme Court of Texas in *Cannon* v. *Boutwell*, 53 Texas, 626 and *Peak* v.

*Brinson*, 71 Texas, 310. In the first case, the title of the defendant depended, as it does here, upon the validity of a power of attorney executed and privily acknowledged by the wife, authorizing the husband to sell and convey her separate property, and the validity of a deed made by the husband under the power, acting for himself and his wife, the deed being executed by him without her privy acknowledgment thereof. In its opinion, the court said: " A deed or power of attorney, signed by the wife alone, is not such an instrument as the statute makes effective to pass her estate. The decisions under similar statutes have been uniform in holding the separate conveyance of the wife invalid, notwithstanding it may have been clearly shown that she acted with her husband's assent," citing several decisions. The opinion further said: " The statute does not attempt to provide for either conveyances or powers of attorney from the wife to the husband, and we think it would be a departure from the policy of the law, wholly unauthorized by anything in the statute, to allow the husband, by means simply of a general power of attorney from the wife, to dispose of her separate estate at his will." Under that decision, the power of attorney from Mrs. Hammekin to her husband would appear to be ineffectual to pass to him any right to transfer her separate property, without her privy acknowledgment of the deed, and the deed from Mr. Hammekin to Scott to be invalid. The same ruling was made in *Peak* v. *Brinson.* The first case was in regard to instruments made in 1856 and 1858, while the second case applied to instruments made between 1870 and 1880.

We cannot say that these errors were immaterial, as it does not appear beyond doubt that they were errors which could not prejudice the rights of the plaintiffs. *Deery* v. *Cray*, 5 Wall. 795, 807 ; *Gilmer* v. *Higley*, 110 U. S. 47, 50. The Circuit Court, by overruling the objections made to the instruments in question, virtually held that they gave the defendant a valid title ; and the evidence afforded by those instruments may have had the effect upon the jury of disproving the acquiescence of Mrs. Hammekin in the boundary line as claimed by the plaintiffs, while it does not appear that she knew any-

thing about the alleged sale by her husband as her attorney-in-fact. The acquiescence and agreement on the part of Mrs. Hammekin formed an issue in the case.

It is contended on the part of the defendant, that there was no question of title in the case, and that the sole question was one of boundary; also, that the question being whether the south boundary of the 6000-acre tract was changed from that called for in the original deed from the Hammekins to Cabellero by their request and authority and ratification, the power of attorney from Mrs. Hammekin to her husband, and their deed, were admissible to show that they and Cabellero had not changed the line; that the instruments were not offered or admitted to prove title; and that the above authorities do not apply to a question which is not one of title. But we have remarked sufficiently on this subject. The petition demands judgment for the land and the notice on it says that the action is brought to try title.

The record is very meagre, but we have arrived at a satisfactory conclusion on the case as presented.

*The judgment of the Circuit Court is reversed, and the case is remanded to that court with a direction to grant a new trial.*