CHICAGO, R. I. & P. RY. CO. v. LINNEY.[1]

(Circuit Court of Appeals, Eighth Circuit. December 4, 1893.)

No. 333.

1. MASTER AND SERVANT—NEGLIGENCE—INSTRUCTIONS—RAILROAD COMPANIES.
   The rule that a servant assumes, not only the ordinary risks known to him, but also those which could be known by the exercise of ordinary care and prudence, should be given to the jury in all cases where it is applicable; but the fact that the latter qualification is omitted in a general statement of the law is immaterial, when it is afterwards correctly given in its specific application to the facts of the case.

2. SAME.
   An instruction that a railroad company is under obligation to its brakemen to provide and maintain reasonably and ordinarily safe coupling apparatus on the cars used by it is no ground for reversal, when immediately followed by further instructions clearly expressing the qualification that the duty is to use ordinary care in that regard.

In Error to the Circuit Court of the United States for the Western District of Missouri.

At Law. Action by Robert T. Linney against the Chicago, Rock Island & Pacific Railway Company for personal injuries. Verdict and judgment for plaintiff. Defendant brings error. Affirmed.

W. F. Evans and Frank P. Sebree, (M. A. Low and H. C. McDougal, on the brief,) for plaintiff in error.

E. H. Stiles, (E. M. Harber and G. A. Knight, on the brief,) for defendant in error.

[1] Rehearing denied January 29, 1894.

Before CALDWELL and SANBORN, Circuit Judges.

SANBORN, Circuit Judge.   At Eldon, in the state of Iowa, between 3 and 4 o'clock in the morning of November 20, 1890, Robert T. Linney, the defendant in error, who was a brakeman in the employment of the plaintiff in error, the Chicago, Rock Island & Pacific Railway Company, was crushed between the tender of an engine and a box car, while attempting to couple them together. For this injury he recovered a verdict and judgment against the company for $11,000, on the ground that the latter negligently furnished a box car, the stem of the drawhead of which was so short or so loose that, when the drawhead was struck by another car or engine, it would not project and hold the box car a sufficient distance apart from the approaching car or engine to enable the brakeman to stand between them to make the coupling, as such drawheads ought to and usually do, but that it would slide back until the approaching car or engine would crush the brakeman who attempted to couple them in the usual manner.   The defenses pleaded in the answer were no negligence on the part of the company, full knowledge of the defect, and of the dangers and risks from it, and an assumption of these dangers and risks, by the defendant in error, and that his injuries were caused by his own carelessness.   The box car on which this defective drawbar was found must have been hauled into Eldon by the Rock Island Company, for it appears from the record that no other company had or operated a railroad through that town.   The car was a Merchants' Dispatch car,—such a car as requires, and is usually provided with, a longer stem for its drawhead than those used on the cars of the Rock Island Company.   But the evidence tended to show that there was one of the short Rock Island stems of this company upon the drawhead of this car.   Until the defendant in error had occasion to couple the engine to this car, he had not seen, or had any opportunity to see or examine, the car or its drawbar. He made the attempt to couple them in the darkness of the night, and testified that the drawhead looked right, and he saw no defect in it, as he stepped in to make the coupling.   In fact, the stem of the drawhead was so short that it permitted the engine and car to come into such close proximity that they crushed the defendant in error, when, if the stem had been of proper length and properly fastened, it would have held them apart, and he would have made the coupling in safety.   Two, or three of the trainmen testified that they discovered the defective condition of this drawbar, and gave notice of it to the defendant in error just before the accident; but he denied that he ever had any knowledge or notice of the defect from any of these witnesses, or otherwise, before the accident, and the jury have found in his favor upon this issue.

The first error assigned, and the one chiefly relied on in this case, is that the court below charged the jury as follows, without inserting in the charge the words inclosed in brackets, when it should have inserted them, and should have given to the jury the qualification of the charge they express:

"If you find from the evidence in the case that the coupling apparatus of the car in question was defective, as claimed by plaintiff's attorneys, and in the respects which I have just described, and if you furthermore find from the evidence that such defect in the coupling apparatus rendered the act of coupling an engine to the car in question more than ordinarily dangerous, and that such defect was the sole cause of the injury which plaintiff has sustained, and that the defect and the danger attending the coupling of the car was not known to, [and could not, by the exercise of ordinary care and prudence, have been discovered before the accident by,] the plaintiff when he attempted to make the coupling in question, then the plaintiff will be entitled to recover, provided you further believe and find from the evidence that such defect as existed in the coupling apparatus was either known to the defendant's car inspectors, whose duty it was to inspect the car in question before the accident happened, or that, in the exercise of ordinary care and diligence on their part, the defect in question ought to have been discovered by them, and to have been repaired, before the plaintiff was hurt."

It goes without saying that it is the general rule that the servant assumes the ordinary risks and dangers of the employment upon which he enters, not only so far as they are known to him, but also so far as they would have been known to one of ordinary prudence and sagacity in his situation, by the exercise of ordinary care. Manufacturing Co. v. Erickson, 5 C. C. A. 341, 55 Fed. 943, 946; Fuel Co. v. Danielson, 57 Fed. 915. Moreover, this rule should be carefully given to the jury in the charge of the court, in every case in which the issues and the evidence make it applicable, and the declaration of it is not rendered futile by more specific instructions, that clearly and properly guide the jury as to their findings upon the issues and evidence presented in the particular case on trial. In this case the defendant in error had never had an opportunity to discover the defect in question before the occasion on which he attempted to make the coupling and was injured. This was in the darkness of an autumn night. The record discloses no evidence that the defective car had ever been at Eldon, or at any other place where the defendant in error was, or where he had ever seen it, or had any opportunity to see or examine it, by the exercise of the greatest diligence, before the occasion on which he was injured. According to this record, there were two ways, and two ways only, in which he might have known or might have discovered the defect and the danger before he was crushed, and these were (1) by the notice which the trainmen testified they gave him before he attempted to make the coupling, and which he denied receiving; and (2) by more carefully and prudently examining the car on the occasion when he attempted to make the coupling. Regarding the first, the court charged the jury specifically that if they believed from the evidence that he was notified by the trainmen of the defect and danger before he undertook to make the coupling, and he afterwards undertook to make it in the usual way, by stepping between the cars, he voluntarily assumed the risk, and was not entitled to recover. Regarding the second, the court charged the jury as follows:

"If you believe and find from the evidence that the plaintiff, by his own want of ordinary care and prudence on the occasion of the injury, either in the manner in which he undertook to make the coupling, or in any other respect,

immediately contributed to bring about or occasion the injury of which he complains, then he was guilty of contributory negligence which will preclude him from recovering, and you will so 'find."

Here were complete and specific instructions to the jury that if. the plaintiff, before or at the time of the accident, knew, or by the exercise of ordinary care and prudence could have discovered and avoided, this danger, in the only ways that, according to the evidence, he had any opportunity to know or discover it, he could not recover. In our opinion, these instructions supplemented and qualified the portion of the charge objected to, and left it without just ground for exception. They more clearly and appropriately presented to the jury the exact questions they were to decide, and the rules of law governing them, under the pleadings and evidence in this case, than any statement of the general rule could have done. They applied the general rule to the specific issues in this case, and gave the plaintiff in error every advantage of it that it was entitled to under the evidence.

That portion of the following charge which is inclosed in brackets is assigned as error:

"[But a railroad company is under an obligation to its brakemen to see that the cars in use upon its road, whether they are its own cars or cars received from some foreign road, are provided with coupling apparatus, such as drawbars, buffers, and bumpers, that are reasonably and ordinarily safe to be used.] A railroad company is not bound to see that the coupling appliances in use upon all of its own cars, or the cars in its possession received from other roads, are the safest possible appliances, or of the latest and most improved pattern. It may use such coupling appliances as are in use at the time by other railroads, and such as are regarded by prudent railroad men as ordinarily safe and fit to be used, even though such appliances are not of the latest and most improved pattern; but, whatever may be the kind of coupling appliances in use on any of its cars, the railroad company is under an obligation to its brakemen to exercise ordinary care in seeing that the coupling appliances 'in use are free from any such defect as will render the act of coupling cars with that particular species of coupling appliance more than ordinarily dangerous; and if a railway company violates its duty in this respect, and by want of ordinary care on its part, or on the part of its car inspectors, it permits a coupling appliance to be used that is defective in any respect, and by reason of such defect the car is not in an ordinarily safe and fit condition to be coupled, then it is liable to a brakeman for any personal injury which he may sustain while in the discharge of his duty, which is occasioned solely by such defect."

The basis of this assignment is that the court declared that the railroad company was under an obligation to its brakemen to see. that the cars in use upon its road were reasonably and ordinarily safe to be used, when it should have charged that its obligation was to exercise ordinary care to see that they were reasonably safe. Undoubtedly, the extent of the duty of the master to the servant in this respect is to exercise ordinary care to furnish reasonably safe machinery and appliances, and to use ordinary care and diligence to keep them in a reasonably safe condition. Railway Co. v. Jarvi, 3. C. C. A. 433, 53 Fed. 65, 67, 68. But no intelligent juror could, we think, have heard the charge on this subject which we have quoted, without clearly understanding that this was the exact extent of the master's duty. The portion of the charge excepted to is the statement that a duty rested upon the master in this re-

gard.   The remainder of the charge on this subject clearly defines the extent and limits of that duty, in strict accordance with the established rule.   An exception cannot be sustained to an isolated sentence of the charge of a court upon a particular subject, when the entire charge upon that subject fairly states the law.   Railroad Co. v. Gladmon, 15 Wall. 401, 409; Evanston v. Gunn, 99 U. S. 660, 668; Stewart v. Ranche Co., 128 U. S. 383, 385-388, 9 Sup. Ct. 101; Spencer v. Tozer, 15 Minn. 146, (Gil. 112;) Peterson v. Railway Co., 38 Minn. 511, 39 N. W. 485; Simpson v. Krumdick, 28 Minn. 352, 10 N. W. 18.

There are several other assignments of error, such as that the court refused to instruct the jury to return a verdict for the plaintiff in error; that the depositions of certain witnesses were improperly admitted; that the court erred in overruling the motion in arrest of judgment because the complaint did not state facts sufficient to constitute a cause of action; and that the court refused to grant a motion for a new trial.   None of them are worthy of extended notice.   It is sufficient to say that we have carefully examined the pleadings, the evidence, and each of the supposed errors assigned, and are of the opinion that no substantial error appears in the record of the trial of this case.

The judgment below is affirmed, with costs.