## WESTERN COAL & MINING CO. v. INGRAHAM.

(Circuit Court of Appeals, Eighth Circuit. September 16, 1895.)

### No. 555.

1. PRACTICE ON APPEAL—REQUEST FOR DIRECTION OF VERDICT.
   An assignment of error, that a verdict is not sustained by the evidence, cannot be considered if the plaintiff in error has not asked, at the close of the whole evidence, for the direction of a verdict in his favor.

2. CHARGING JURY — ERROR IN ONE PART CORRECTED BY OTHER PARTS OF CHARGE.
   An exception to a charge will not be sustained on account of the absence, in one paragraph, of a qualifying word or phrase, if the whole charge states the law correctly.

3. MASTER AND SERVANT—RULE OF SAFE PLACE—MINE OWNER.
   It is a positive duty which the owner of a mine owes to his servants, after the mine is opened and timbered, to use reasonable care and diligence to see that the timbers are properly set, and to keep them in proper condition and repair, and for this purpose to provide a competent mining boss or foreman, to make timely inspections of the timbers, walls, and roof of the mine.

4. SAME—FELLOW SERVANTS.
   Where a miner was injured by the fall of the roof of that part of the mine where he was working, in consequence of the negligent and improper manner in which the timbering had been done by other employés of the mine owner before such miner was hired, the defects being such as could be discovered by proper inspection, *held*, that the doctrine of fellow servants had no application.

5. WHEN NEGLIGENCE OF SERVANT IMPUTED TO MASTER.
   It is an absolute duty, which the master owes his servant, to exercise reasonable care and diligence to provide the servant with a reasonably safe place in which to work, having regard to the kind of work and the

conditions under which it must necessarily be performed; and when the master, instead of performing this duty in person, delegates it to a servant, then such servant stands in the place of the master, and his negligence is the negligence of the master.

In Error to the Circuit Court of the United States for the Western District of Arkansas.

The plaintiff 'in error, the Western Coal & Mining Company, owned and operated a coal mine, and employed the defendant in error, Marcena Ingra-- ham, to work therein. From the evidence in the record the jury might infer these facts: That the mine had been worked and many rooms therein driven up long prior to the employment of the plaintiff; that the roof of the mine had been timbered or propped by other miners months before the plaintiff went to work in the mine; that the plaintiff was set to work by the mining boss "pulling a pillar" in the mine; that while so at work the timbers or props which supported the roof of the mine in the room in which the plaintiff was at work, and which were set by other miners two months or more before he commenced work, were knocked down by a mule attached to a car used to haul coal .out of the mine, and thereupon rocks and slate fell from the roof of the mine upon the plaintiff, and inflicted the injuries complained of; that the props would not have been knocked down, or fallen, if they had been properly set in the first instance; that an inspection of the timbering or props in the mine by a reasonably capable mining boss or inspector would have disclosed the fact that the props which fell were insufficiently and defectively set, and rendered the mine insecure and dangerous to work in; that the mule which knocked the props down was ungovernable and vicious, and that fact was known to the defendant; that the plaintiff was in the exercise of due care when he was injured, and tnat no negligence of his in any respect contributed in any degree to the. accident. There was conflict in the evidence on some of these points, but the jury were at liberty to find the facts as here stated. The plaintiff recovered judgment, and the defendant sued out this writ of error.

Geo. E. Dodge, B. S. Johnson, and C. B. Moore filed brief for plaintiff in error.

C. A. Severance (Thomas H. Barnes, William M. Mellette, C. K. Davis, and F..B. Kellogg, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The duty which one operating a coal mine owes to his employés is not a new question in this court. In the case of Railway Co. v. Jarvi, 10 U. S. App. 444, 3 C. C. A. 433, and 53 Fed. 65, a miner was injured by the fall of a rock from the roof of the mine, and, in affirming the judgment he had recovered for the injuries he received, this court, in defining the duty of a mining company to its employés, said:

"It is the duty of the employer to exercise ordinary care to provide a reasonably safe place in which his employé may perform his service. It is his duty to use diligence to keep this place in a reasonably safe condition, so that his servant may not be exposed to unnecessary and unreasonable risks. The care and diligence required of the master is such as a reasonably prudent man would exercise under like circumstances in order to protect his servants from injury. It must be commensurate with the character of the service required, and with the dangers that a reasonably prudent man would apprehend under the circumstances of each particular case. Obviously, a far higher degree of care and diligence is demanded of the master who places his servant at work digging coal beneath overhanging masses of rock and earth in a mine than of him who places his employé on the sur-

face of the earth, where danger from superincumbent masses is not to be apprehended. A reasonably prudent man would exercise greater care and watchfulness in the former than in the latter case, and, throughout all the varied occupations of mankind, the greater the danger that a reasonably intelligent and prudent man would apprehend, the higher is the degree of care and diligence the law requires of the master in the protection of the servant. For a failure to exercise this care, resulting in the injury of the employé. the employer is liable; and this duty and liability extend, not only to the unreasonable and unnecessary risks that are known to the employer, but to such as a reasonably prudent man in the exercise of ordinary diligence—diligence proportionate to the occasion—would have known and apprehended. Cook v. Railroad Co., 34 Minn. 45, 24 N. W. 311; Hayden v. Manufacturing Co., 29 Conn. 548; Noyes v. Smith, 28 Vt. 59; Gibson v. Railroad Co., 46 Mo. 163; Nadau v. Lumber Co. (Wis.) 43 N. W. 1135, 1137; Hutchinson v. Railroad Co., 5 Exch. 343; Huddleston v. Machine Shop, 106 Mass. 282; Snow v. Railroad Co., 8 Allen, 441; Sullivan v. Manufacturing Co., 113 Mass. 396; Ryan v. Fowler, 24 N. Y. 410; Patterson v. Railway Co., 76 Pa. St. 389; Swoboda v. Ward, 40 Mich. 420."

And, after stating that it is the duty of the servant to exercise that degree of care which a reasonably prudent person would employ under like circumstances in order to protect himself from injury, the opinion proceeds:

"But the degrees of care in the use of a place in which work is to be done, or in the use of other instrumentalities for its performance, required of the master and servant in a particular case, may be, and generally are, widely different. Each is required to exercise that degree of care in the performance of his duty which a reasonably prudent person would use under like circumstances: but the circumstances in which the master is placed are generally so widely different from those surrounding the servant, and the primary duty of using care to furnish a reasonably safe place for others is so much higher than the duty of the servant to use reasonable care to protect himself in a case where the primary duty of providing a safe place or safe machinery rests on the master, that a reasonably prudent person would ordinarily use a higher degree of care to keep the place of work reasonably safe if placed in the position of the master who furnishes it than if placed in that of the servant who occupies it. Of the master is required a care and diligence in the preparation and subsequent inspection of such a place as a room in a mine that is not, in the first instance, demanded of the servant. The former must watch, inspect, and care for the slopes through which and in which the servants work as a person charged with the duty of keeping them reasonably safe would do. The latter has a right to presume, when directed to work in a particular place, that the master has performed his duty, and to proceed with his work in reliance upon this assumption, unless a reasonably prudent and intelligent man, in the performance of his work as a miner, would have learned facts from which he would have apprehended danger to himself. Russell v. Railway Co., 32 Minn. 230, 20 N. W. 147; Hutchinson v. Railroad Co., 5 Exch. 343; Gibson v. Railroad Co., 46 Mo. 163; Cook v. Railroad Co., 34 Minn. 47, 24 N. W. 311."

In the case of Mather v. Rillston, 156 U. S. 391, 15 Sup. Ct. 464, the supreme court of the United States, in defining the duties mine owners owed their employés, said:

"All occupations producing articles or works of necessity, utility, or convenience may undoubtedly be carried on, and competent persons, familiar with the business, and having sufficient skill therein, may properly be employed upon them, but in such cases where the occupation is attended with danger to life, body, or limb, it is incumbent on the promoters thereof and the employers of others thereon to take all reasonable and needed precautions to secure safety to the persons engaged in their prosecution, and for any negligence in this respect, from which injury follows to the persons en-

gaged, the promoters or the employers may be held responsible and mulcted to the extent of the injury inflicted. The explosive nature of the materials used in this case, and the constant danger of their explosion from heat or collision, as already explained, was well known to the employers, and was a continuing admonition to them to take every precaution to guard against explosions. Occupations, however important, which cannot be conducted without necessary danger to life, body, or limb, should not be prosecuted at all without all reasonable precautions against such dangers afforded by science. The necessary danger attending them should operate as a prohibition to their pursuit without such safeguards. Indeed, we think it may be laid down as a legal principle that in all occupations which are attended with great and unusual danger there must be used all appliances readily attainable known to science for the prevention of accidents, and that the neglect to provide such readily attainable appliances will be regarded as proof of culpable negligence. If an occupation attended with danger can be prosecuted by proper precautions without fatal results, such precautions must be taken by the promoters of the pursuit or employers of laborers thereon. Liability for injuries following a disregard of such precautions will otherwise be incurred, and this fact should not be lost sight of."

The first assignment of error to which our attention is called in the brief of the plaintiff in error is that the verdict is not sustained by the evidence. This assignment cannot be considered, for the reason that the defendant did not ask at the close of the whole evidence a peremptory instruction for a verdict in its behalf. Village of Alexandria v. Stabler, 4 U. S. App. 324, 1 C. C. A. 616, and 50 Fed. 689; Insurance Co. v. Unsell, 144 U. S. 439, 12 Sup. Ct. 671; Insurance Co. v. Frederick, 7 C. C. A. 122, 58 Fed. 144.

It is assigned for error that in one paragraph of the charge defining the duty the defendant owed to the plaintiff the court used the phrase "safe place to work" instead of "reasonably safe place to work." If the defendant intended to except to the absence of the qualifying word "reasonably," it should have pointed out the error specifically at the time. It could not object to the whole paragraph, which states the law accurately on one point, and in the appellate court, for the first time, rest its objection on the absence of a single qualifying word, the absence of which no jury would ever perceive, and which the court would readily have inserted if its attention had been called to the technical omission at the time. But, if the exception to the paragraph of the charge in question was well saved, it would avail the plaintiff in error nothing, for the reason that at the defendant's request the court instructed the jury fully and explicitly on the subject. At the defendant's request the court told the jury:

"The court instructs the jury that the only duty which the defendant company owed the plaintiff was to use ordinary care that the place where he was put to work was reasonably safe; and if the jury find that the defendant employed a man of experience and skill as pit boss or foreman of the mine, and that said pit boss or foreman exercised ordinary care—that is, usual and customary care—in examining the place where the plaintiff was placed to work, then the defendant is not liable in this action."

We have twice held that an exception to the charge will not be sustained on account of the absence in one paragraph of some single qualifying word or phrase if the whole charge, when taken together, states the law on the subject correctly. Railway Co. v. Linney, 59 Fed. 45, 7 C. C. A. 656; Railway Co. v. Needham (present term) 69 Fed. 823.

The other assignments of error relate to instructions given and refused, and to evidence admitted or rejected on the question whether the plaintiff was a fellow servant of the other employes of the defendant to whose negligence the accident was attributable, and to exceptions to the admission and rejection of the opinions of miners as to whose duty it was to inspect and keep the timbers in the mine in proper condition and repair. The contention of the defendant is that the defect in the timbering of the mine was the result of the negligence of the miners who opened and timbered the room, and of the pit or mine boss, and that, as these persons were the fellow servants of the plaintiff, he cannot recover. But upon the conceded facts of the case the fellow-servant doctrine has no application to this case. The issue was whether the defendant had discharged its duty to the plaintiff in furnishing him with a reasonably safe place in which to work. The mine had been timbered long before the plaintiff went to work therein, and the accident resulted from a defect in that timbering. It is not claimed that the plaintiff had anything to do with this timbering, or that it was any part of his duty to inspect or repair the same. Whatever may be the duty of coal miners with reference to timbering the slopes and roofs of the rooms from which they remove the coal, the rule is well settled that, after a mine is once opened and timbered, it is the duty of the owner or operator to use reasonable care and diligence to see that the timbers are properly set, and keep them in proper condition and repair. For this purpose it is his duty to provide a competent mining boss or foreman to make timely inspections of the timbers, walls, and roof of the mine, to the end that the miners may not be injured by defects or dangers which a competent mining boss or foreman would discover and remove. This is a positive duty which the master owes the servant. A neglect to perform this duty is negligence on the part of the master, and he cannot escape responsibility for such negligence by pleading that he devolved the duty on a fellow servant of the injured employé. It is an absolute duty which the master owes his servant to exercise reasonable care and diligence to provide the servant with a reasonably safe place in which to work, having regard to the kind of work and the conditions under which it must necessarily be performed; and whenever the master, instead of performing this duty in person, delegates it to an officer or servant, then such officer or servant stands in the place of the master, and the negligence of such officer or servant is the negligence of the master; and any servant injured by such negligence may recover from the master for such injury regardless of the relation the injured servant sustained to the officer or servant whose negligence resulted in inflicting the injury.

"A master," says the supreme court in Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, "employing a servant, impliedly engages with him that the place in which he is to work and the tools or machinery with which he is to work or by which he is to be surrounded shall be reasonably safe. It is the master who is to provide the place and the tools and the machinery, and when he employs one to enter into his service he impliedly says to him that there is no other danger in the place, the tools, and the machinery than such as is obvious and necessary. Of course, some places of work

and some kinds of machinery are more dangerous than others, but that is something which inheres in the thing itself, which is a matter of necessity, and cannot be obviated. But within such limits the master who provides the place, the tools, and the machinery owes a positive duty to his employé in respect thereto. That positive duty does not go to the extent of a guaranty of safety, but it does require that reasonable precautions be taken to secure safety, and it matters not to the employé by whom that safety is secured or the reasonable precautions therefor taken. He has a right to look to the master for the discharge of that duty, and if the master, instead of discharging it himself, sees fit to have it attended to by others, that does not change the measure of obligation to the employé, or the latter's right to insist that reasonable precaution shall be taken to insure safety in these respects. Therefore it will be seen that the question turns rather on the character of the act than on the relations of the employés to each other. If the act is one done in the discharge of some positive duty of the master to the servant, then negligence in the act is the negligence of the master; but if it be not one in the discharge of such positive duty, then there should be some personal wrong on the part of the employer before he is held liable therefor."

The plaintiff was set to work in a room already timbered, and, as was said by this court in Railway Co. v. Jarvi, supra, he had "a right to presume, when directed to work in a particular place, that the master has performed his duty, and to proceed with his work in reliance upon this assumption, unless a reasonably prudent and intelligent man in the performance of his work as a miner would have learned facts from which he would have apprehended danger to himself."

Upon the facts of the case, therefore, and the issue as it was presented to the jury, the question whether the "pit boss" was a fellow servant of the plaintiff was wholly immaterial, and the court might well have rejected all evidence and all instructions relating to that question. It was not the negligence of the pit boss, but the negligence of the master in not furnishing a reasonably safe place to work, that was complained of. The duty rested on the master to exercise reasonable care and diligence to furnish the plaintiff a reasonably safe place in which to work, and the master is not relieved from responsibility for failing to perform this duty because he saw proper, instead of performing it himself, to intrust its performance to a servant who neglected the duty. The servant's negligence in such cases is the negligence of the master. And so, too, the question as to whose duty it was to keep the mine when once opened and timbered in a reasonably safe condition was one of law, and not one of fact depending upon the varying opinions of the miners, and the testimony introduced or offered on that subject was irrelevant and immaterial.

There was abundant evidence for the jury to find that the props which supported the roof fell because they had not been properly set and fastened, and that such defective setting could have been discovered by the exercise of reasonable care and diligence on the part of any one having a reasonably fair knowledge of such business. The immediate cause of the fall of the props was the contact with them of the mule at work in the mine, or of the chains or single-tree attached to the mule, but they would not have fallen from such contact if they had been properly set and fastened. Upon the sub-

ject of the part the mule played in the accident, the defendant asked the court to give the following instruction:

"If the evidence shows that the mule which caused the props to fall was an unruly and vicious animal, and dangerous to be used in the work in which it was employed, and this fact was known to the plaintiff, and yet he consented and continued to work in the place where the dangerous mule was employed, without objection or complaint to his employer, he cannot recover in this action, and your verdict will be for the defendant."

This request was properly refused. The plaintiff had no charge or care of the mule. He was driven by other persons to those parts of the mine where his services were needed.

It would require a great stretch of the rule which the defendant attempts to invoke to say the plaintiff should have anticipated that this mule might at some time be brought to the room in the mine where the plaintiff was at work, and that, while there, the mule would come in contact with the timbers which supported the roof of the mine, and knock them down, because they were insecurely set, and that as a result of all this the roof would fall, and he might be injured, and that, anticipating all this, he ought to have quit the defendant's service. The case does not call for any discussion of what is a primary, proximate, or remote cause. Here all the causes of the accident, whether remote or proximate, were the result of the defendant's negligence, which the plaintiff was not required to anticipate.

Much of the charge of the court to the jury seems to have been taken almost literally from the opinion of this court in the case of Railway Co. v. Jarvi, supra; and, as the rules of law laid down in that case were applicable to the facts in this case, we cannot say that the circuit court erred in conforming its instructions to a well-considered opinion of this court.

The judgment of the circuit court is affirmed.