## CHOCTAW, O. & G. R. CO. v. TENNESSEE.

(Circuit Court of Appeals, Eighth Circuit. April 24, 1902.)

No. 1,624.

1. MASTER AND SERVANT—ACTIONS FOR INJURY OF SERVANT—QUESTIONS FOR JURY.

Plaintiff, who was head brakeman on a freight train, stepped upon the stirrup or step on the front of the engine pilot as the train was moving slowly along a switch track in the yards at night, and, by reason of the giving way of the step, his foot went between the ties, where it was caught and crushed. In an action to recover for the injury there was evidence tending to show that the step was out of repair, and had been for some days, but that such fact was unknown to plaintiff; that it was customary to fill the spaces between ties in a switch yard, and that plaintiff had been in this yard, which was new, but once or twice before, and then at night; that it was customary and proper for the head brakeman to ride on the pilot when the train was going upon the switch tracks to attend to the opening and closing of switches, and that the steps were placed there for that purpose; that there was no rule of the company, known to plaintiff, against stepping on such pilots while the train was in motion, unless it was moving at a high rate of speed. There was also evidence on behalf of defendant that it was not customary to have the spaces between ties filled in new yards, like the one in question. Held, that the court did not err in refusing to decide the questions of negligence or contributory negligence as matter of law, and properly submitted them to the jury.

**2. SAME—INSTRUCTIONS—HARMLESS ERROR.**

A statement in the charge of the court that it was the duty of a master to furnish to its servants machinery in a reasonably safe condition, and a reasonably safe place for the servants to work, without the proper qualification that the exercise of reasonable and ordinary care only was required in that respect, is not a material error for which the judgment will be reversed, where the rule was correctly given in another place, and the charge, as a whole, correctly stated the law applicable to the case.

**3. SAME—RAILROADS—CARE AS TO CONDITION OF SWITCH YARDS.**

An instruction is not erroneous which charges that it is the duty of a railroad company to exercise greater care to keep the spaces between ties filled, and the ground level, in large switch yards, where trains are made up and much switching done, than would be required in yards where there is less occasion to make couplings.

**4. SAME—INSTRUCTIONS IN ACTION FOR INJURY OF SERVANT—HARMLESS ERROR.**

A statement in the charge in an action by a servant to recover for a personal injury that plaintiff could not recover if his own negligence or want of attention contributed "in any considerable degree" to his injury did not constitute reversible error, where in the same connection the court correctly enumerated the things which, under the facts shown by the evidence, would constitute contributory negligence.

Sanborn, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Eastern District of Arkansas.

E. B. Peirce and Charles B. Stuart (J. W. McLoud, on the brief), for plaintiff in error.

J. W. House (J. E. Williams and J. W. Blackwood, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. This is an action for personal injuries which was brought by Thomas Tennessee, the defendant in error, a brakeman in the employ of the Choctaw, Oklahoma & Gulf Railroad Company, against that company. The injury complained of was sustained on February 6, 1900, at Argenta, Ark., near Little Rock, at which place the company had an extensive yard for parking and making up freight trains. The plaintiff below was head breakman on a freight train of the defendant company which arrived at this yard about 10 o'clock p. m. on the night of the accident; having come from Memphis, Tenn. As it headed into the yard, the plaintiff descended from the engine, and threw, in succession, two switches to let the train in onto the lead track, and to the particular side track where it was to stand for the night. After throwing the last switch, being in front of the engine, he attempted to board the pilot of the engine for the purpose of riding down into the lower part of the yard, to see that the switches were lined up, and to be in a convenient position to open or close them readily if they were not properly lined up. In his attempt to board the pilot, he stepped on an iron step or stirrup which was bolted to the bottom of the pilot or cowcatcher, about six or eight inches from the point thereof, when, as he claimed, the stirrup gave way, and his foot went down between the ties, which at that point

were not filled in; the result being that his leg was run over and crushed, and had to be amputated. He charged as negligence on the part of the company the defective condition of this stirrup, and the fact that the track was not filled in between the ties as it ought to have been, by reason of which defect his foot was caught or wedged in under one of the ties so that he could not extricate it. The case was submitted to the jury, and there were a verdict and judgment below in favor of the plaintiff, to reverse which the defendant company sued out a writ of error.

One of the errors assigned is that the trial court refused to withdraw the case from the jury, as it was requested to do; and, as this contention presents the principal question in the case, we are compelled to state the substance of the testimony which was adduced at the trial. The plaintiff's witnesses, including the plaintiff, who was one of the principal witnesses, testified to the following effect: That the proper position for a head brakeman on a freight train, when it is running into yards like the one at Argenta, is on the front of the engine, to enable him to line up the switches promptly, as they are encountered, and prevent derailments; that the pilots of freight engines are provided with footplates or stirrups, on which it is customary for the head brakeman to stand for that purpose; that the engine which he attempted to board on the occasion of the accident was provided with such a footplate; that he had never received instructions not to ride on the front end of the engine, in the manner described, but, on the contrary, had often been commanded by conductors to so ride; that the only rule on the subject which had been prescribed by the defendant company that he ever saw was a rule warning its employés not to jump on or off an engine when it was running "at a high rate of speed"; that on the occasion of the accident the engine was moving very slowly,—not more than four miles an hour; and that, when the plaintiff attempted to board the engine and was hurt, he was discharging his duties in the proper and customary manner, as all other employés under like circumstances were in the habit of discharging them. With reference to the condition of the stirrup on the pilot, the evidence elicited from the plaintiff was that "it gave way or went down" when he stepped on it, and that his foot was wedged in under one of the ties (the space between the ties not being filled in) so that he could not extricate it in time to prevent being run over; while another witness testified that this stirrup on the pilot was in a defective condition, being so loose three or four days prior to the accident; that he had at that time warned a fellow brakeman not to step on it, because of the condition it was then in. The plaintiff, testifying in his own favor, denied having any knowledge that the stirrup was out of repair and defective before the accident occurred. The testimony relating to the condition of the yard tracks and the plaintiff's knowledge of their condition was to the following effect: The yard had been constructed during the months of October, November, and December, 1899, and was of large dimensions; consisting of 10 or 12 long tracks, laid side by side, which branched off from a lead track surrounding the yard. The defendant company began to use this

yard to park and make up its trains late in the month of December, 1899. On account of physical disability, the plaintiff laid off and did not work for the company during the month of January, 1900, and, as he testified, had not been in this yard, save on two or three occasions, prior to the accident. On these occasions he was either in the yard about daylight in the morning to help take out his train after it was made up, or when it headed into the yard about 9 or 10 p. m., as on the evening of the accident, on the return of the train from Memphis. He had never been on track No. 3, where he was hurt, until the evening of the accident; and he denied having any information concerning the condition of that track prior to being injured, or any knowledge concerning the condition of the tracks generally, save such as was acquired by a casual glance on the two or three occasions aforesaid when he was in the yard, or when he was passing in proximity to it on the main track, and was at the time in the discharge of his ordinary duties. The spaces between the ties of track No. 3 and in the yard generally had not been filled in with earth, although it is customary to fill in between the ties and make the surface of the ground as level as possible in depot yards where much switching is to be done. The plaintiff testified that, if the track had been filled in, his foot would not have been caught, and that he could have extricated himself when the stirrup on the pilot gave way. On the other hand, the defendant produced evidence which tended to show that while it is customary to surface up the tracks in depot yards, by filling in between the ties, yet, as this was a new yard, it was in the condition in which newly constructed yards are usually left for some time, to permit the water to drain out.

Such being the character of the evidence that was adduced on the trial, we think that the case could not have been lawfully withdrawn from the jury without usurping its functions. The testimony manifestly tended to show that the stirrup in question had been in a defective condition for some days prior to the accident, and that the defect in the stirrup was a proximate cause of the injury. Moreover, in view of its location and the use that was made of it by brakemen, the jury were doubtless warranted in finding that, in the exercise of ordinary care, the defect should have been discovered by the defendant and repaired prior to the accident. We also think that because of the location of the track where the accident occurred, and the use that was made of it for switching purposes and to assemble trains, it was the province of the jury to decide whether it was in a fit condition for the uses to which it was devoted, and whether the defendant company was chargeable with any want of ordinary care or diligence in that respect. These were questions, as we think, respecting which reasonable men might entertain different opinions; and, such being the fact, it was the province of the jury to determine them.

Counsel urge, however, that the plaintiff ought not to have made the attempt to board the engine while it was in motion, and that, because he did so, the trial court should have declared, as a matter of law, that he was guilty of contributory negligence, and could not recover. But this contention ignores important evidence, which this

record contains, showing that this stirrup on the pilot was placed there for the express purpose of enabling brakemen to board the engine and stand on the pilot; that brakemen were in the habit of thus boarding engines when they were moving slowly, and standing on the stirrup; that no rule of the company, known to the plaintiff, had ever forbidden such acts prior to the accident; that the plaintiff had at times been ordered by conductors under whom he worked to place himself in that position for the purpose of lining up switches or doing other necessary acts; and that he was in the proper and customary discharge of his duties when he was injured. Under the circumstances, it was not the duty of the court to decide, as a matter of law, that the plaintiff was guilty of contributory negligence in attempting to step on the pilot of the engine when it was in motion, but its obvious duty was to submit that issue to the jury; leaving them to determine, in the light of all the evidence, whether he was guilty of such an act of negligence as should preclude him from recovering. The placing of this stirrup on the engine was an invitation to brakemen to stand thereon. It was placed there for that purpose, as the defendant company concedes; while its rule warning employés against jumping on engines when moving at "a high rate of speed" impliedly permitted them to do so when they were moving slowly. Besides, if the testimony of the plaintiff is credited, it was his duty to stand on this footplate as the train moved slowly down into the yard, to observe the condition of switches, and be in a position to close them promptly and prevent a derailment if any were found open.

Counsel for the defendant company have called our attention to a number of well-known cases in support of their contention that the plaintiff was guilty of contributory negligence in attempting to get on the pilot, with a view of riding thereon, when the train was moving; but we think that the case in hand is distinguishable therefrom by the facts and circumstances to which we have alluded, and that, if the plaintiff might have been found guilty of contributory negligence, it was in this instance the province of the jury, rather than the duty of the court, to make that finding. We conclude, therefore, that no error was committed by the trial court in submitting the case to the jury.

The charge of the lower court is criticised because in one or two places the language which was employed, when considered by itself, might be understood to mean that a master is bound at all events to furnish machinery, etc., which is reasonably safe, whereas the law is that he is only required to exercise reasonable and ordinary diligence in that behalf; the duty not being imperative or absolute. For example, the court said in one place:

"The duty which a railroad company * * * owes to its employés is to furnish machinery in a reasonably safe condition, and a reasonably safe place for the servant to work."

It neglected to say that it is the duty of a railroad company to exercise reasonable care in the matter of providing machinery. Whatever error there may have been in these respects was cured, we think, by other portions of the charge,—particularly by the concluding para-

graphs thereof, where the court clearly specified the degree and kind of diligence which the defendant company ought to have exercised in providing machinery and appliances; telling the jury, in substance, with respect to the stirrup, which was the only appliance complained of, that if it had been inspected at proper and suitable times by the defendant, and was found to be in good condition, and if it had become loose, for some unforeseen or unknown cause, shortly before the plaintiff was hurt, the defendant could not be found guilty of negligence because of the defect in the stirrup, since in that event it would have exercised due diligence. In the same connection the jury were instructed, in substance, that if the stirrup had become loose so long prior to the accident that by the exercise of reasonable or ordinary diligence the defendant could have discovered it and repaired it, then and in that event it might be deemed guilty of negligence. The jury were also instructed that the master is not the insurer of his servants' safety, and that all he undertakes to do is to keep the machinery which he uses in proper order and repair, and to use such diligence in that behalf as a prudent and careful man would use. The rule, as heretofore declared by this and other courts, being that a judgment will not be reversed on account of the failure to use some qualifying word or phrase in some clause of the charge, when the charge, considered as a whole, states the law applicable to the case correctly (Mining Co. v. Ingraham, 17 C. C. A. 71, 70 Fed. 219; Mining Co. v. Flaherty, 49 C. C. A. 361, 111 Fed. 312; Railroad Co. v. Krausz, 50 C. C. A. 293, 112 Fed. 379), it follows that the error above mentioned, in view of what was said in other parts of the charge, cannot be regarded as a material error, such as would warrant a reversal.

Complaint is also made because the lower court charged the jury, in substance, that in large railroad yards, where there is much traffic and many employés, a railroad company is required to exercise more diligence and keep its tracks in better condition than it would out in the country; but we have been unable to discover any material error in this instruction. The court obviously meant that in railroad yards, where trains are made up and much switching and coupling are done, a railroad company ought to exercise greater care in keeping the space between its ties filled up, and the ground level and free from obstructions or pitfalls, than in other places along its line, where there is less occasion to make couplings. As thus understood,—and the instruction is not fairly susceptible of a different interpretation, as applied to the facts of this case,—it was correct.

In another part of the charge the lower court said, concerning the plaintiff: "If he was careless himself,—if the want of attention to his own safety contributed in any considerable degree to his injury,—the railroad company is not liable;" and this statement of the law forms the subject-matter of another exception, which would have been tenable were it not for the fact that the court in the same connection specified the particular acts which would amount to contributory negligence and preclude the plaintiff from recovering; telling the jury, in substance, that an employé cannot recklessly and unnecessarily expose himself to danger, and then recover for an injury to which said exposure contributed; that "if the plaintiff had no business to

get on that footplate [meaning, of course, the stirrup which gave way], but his duty was to jump on the back step, or the step back of the engine, which was wider and more suitable for a man to jump on, then it is immaterial whether the plate in front was securely fastened or not." We are of opinion that this statement by the trial judge sufficiently advised the jury of the nature of the acts which, if committed by the plaintiff, would amount to contributory negligence, to prevent the instruction which is criticised from misleading the jury, and to deprive the exception which is now under consideration of any merit.

In the course of the trial a witness for the plaintiff, who had testified that the step on the pilot was loose three or four days before the accident, and that he had warned one of his fellow brakemen not to step on it, was asked whether he saw the step the morning after the accident; and he replied that he went down the next morning and looked at the engine, and the piece had been removed. The defendant company objected to the latter part of this answer on the general ground that it was "incompetent, irrelevant, and immaterial to any issue in the case," and an exception was saved. It is manifest, we think, that this question was not asked by counsel for the plaintiff with a view of showing that the alleged defect was repaired by the master after the accident had occurred, which class of testimony is generally inadmissible. Counsel obviously had no such purpose in view. The witness was asked if he saw the step the morning after the accident, evidently with a view of inquiring further what condition it was then in; and he replied casually that the morning after the accident it had been removed, which may have meant that it was torn off when the plaintiff stepped on it, and was not on the pilot the next morning. Besides, the court instructed the jury that if any evidence had been introduced showing that subsequent to the accident the defendant repaired the step on the pilot, or filled in the spaces between the ties, such testimony should not be considered by the jury as any evidence that such action should have been taken before the accident occurred. It is clear, therefore, that the exception last specified is of no moment, and should be disregarded.

Several other exceptions were taken during the trial, and are embraced in the assignment of errors, all of which have been considered, and found to be without merit. Most of these exceptions have not been argued by counsel, but our attention has simply been directed to them in the brief. The case seems to have been fairly and thoroughly tried. The instructions, in all material respects, were as favorable to the defendant as could have been desired, except that the court declined to withdraw the case from the jury, holding that there were issues of fact in the case which ought to be determined by the jury; and in this respect its action was right.

The judgment below is accordingly affirmed.

SANBORN, Circuit Judge (dissenting). The alleged causes of action in this case were the failure of the railroad company to exercise ordinary care to properly ballast its tracks, and to inspect and

keep the step on the bottom of the cowcatcher in repair. In regard to these subjects the court below instructed the jury in three different places in its charge that the law imposed upon the railroad company the absolute duty to furnish its employés a reasonably safe place to work, and reasonably safe machinery with which to discharge their duties. These three declarations, one of which was delivered early in the charge, one when the court had delivered about one-third of it, and the last near its close, read in this way:

(1) "What it owes to its employés is to furnish machinery in a reasonably safe condition, and a reasonably safe place for the servant to work in the discharge of his duties. A failure to do so makes the company liable in damages for any injuries sustained by the servant while in the discharge of his duties, if the servant's own acts or negligence do not contribute to the accident."

(2) "Now, as to the condition of the track where the accident occurred; if the railroad company failed to keep the track in a reasonably safe condition, and by reason of that failure the plaintiff, by no negligence of his own, sustained the injury complained of, then it is liable."

(3) "I want to state this: It is the duty of a railroad corporation, or any other employer or person, especially where there is machinery, as I told you at the start, to furnish reasonably safe appliances to its employés; otherwise it is liable."

Here were three erroneous declarations of the law controlling the rights of the parties in this litigation. They were not trivial and inadvertent mistakes in the use of words or terms, but solemn and thoughtful declarations of the rule of law which the court clearly intended should control, and which doubtless did govern, the jury in its deliberations. That they were erroneous, the following authorities demonstrate: Railroad Co. v. Holloway (C. C. A.) 114 Fed. 458; Railway Co. v. Jarvi, 3 C. C. A. 433, 435, 436, 53 Fed. 65, 67, 68; Gowen v. Harley, 6 C. C. A. 190, 197, 56 Fed. 973, 980; Railway Co. v. Linney, 7 C. C. A. 656, 660, 59 Fed. 45, 48; Railroad Co. v. Needham, 16 C. C. A. 457, 459, 69 Fed. 823, 825; Railroad Co. v. Johnson, 27 C. C. A. 367, 368, 81 Fed. 679, 680; Railroad Co. v. Myers, 11 C. C. A. 439, 63 Fed. 793; Id., 22 C. C. A. 269, 76 Fed. 443. The presumption is that error produces prejudice. It is only when it appears so clear as to be beyond doubt that the error challenged did not prejudice, and could not have prejudiced, the complaining party, that the rule that error without prejudice is no ground for reversal is applicable. Railroad Co. v. Holloway (C. C. A.) 114 Fed. 458; Association v. Shryock, 20 C. C. A. 3, 11, 73 Fed. 774, 781; Railroad Co. v. McClurg, 8 C. C. A. 322, 325, 326, 59 Fed. 860, 863; Deery v. Cray, 5 Wall. 795, 807, 808, 18 L. Ed. 653; Smith v. Shoemaker, 17 Wall. 630, 639, 21 L. Ed. 717; Moores v. Bank, 104 U. S. 625, 630, 26 L. Ed. 870; Gilmer v. Higley, 110 U. S. 47, 50, 3 Sup. Ct. 471, 28 L. Ed. 62; Railroad Co. v. O'Brien, 119 U. S. 99, 103, 7 Sup. Ct. 118, 30 L. Ed. 299; Mexia v. Oliver, 148 U. S. 664, 673, 13 Sup. Ct. 754, 37 L. Ed. 602; Railroad Co. v. O'Reilly, 158 U. S. 334, 337, 15 Sup. Ct. 830, 39 L. Ed. 1006; Peck v. Heurich, 167 U. S. 624, 629, 17 Sup. Ct. 927, 42 L. Ed. 302.

It is true that, while the court gave the erroneous rule of law to the jury three times at three different places in its charge, it also gave

the true rule once. But this neither extracted the error, nor proved that this error could not have prejudiced the railroad company. The presumption, as we have seen, is that this error of law did produce prejudice, unless the contrary clearly appears beyond doubt. It cannot so appear, either beyond doubt or by a preponderance of evidence, where the court repeats the error twice, and gives the true rule but once. Where two contradictory rules are given to the jury by the charge of the court for their guidance in determining the crucial issues of a controversy, as in the case at bar, it is impossible for an appellate court to ascertain or to know by which the jury were governed in their decision of the issues, and the presumption that error produces prejudice must prevail. The vice of a wrong rule is not extracted by giving a right rule, because it is impossible to tell which influenced the jury. Railway Co. v. Needham, 3 C. C. A. 129, 147, 52 Fed. 371, 377; Railroad Co. v. Farr, 6 C. C. A. 211, 216, 217, 56 Fed. 994, 1000.

There was another error in the charge. It consisted in the instruction that the negligence of the plaintiff was a bar to his recovery if that negligence contributed in any considerable degree to his injury, when the law was that it constituted a bar if it contributed in any degree. On account of these palpable errors in the charge of the court, the judgment below should be reversed, and a new trial should be directed.