## AMERICAN CAR & FOUNDRY CO. v. BARRY.

(Circuit Court of Appeals, Eighth Circuit.   April 17, 1912.)

No. 3,559.

1. MASTER AND SERVANT (§ 270*)—INJURIES TO SERVANT—DEFECTIVE APPLIANCE—PRIOR ACCIDENT WITH THE SAME TOOL.

In an action for injuries to a servant by the telescoping of a car jack, evidence that a jack identified as the same one had slipped nearly three weeks before and injured another servant was admissible.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 913–927, 932; Dec. Dig. § 270.*]

2. MASTER AND SERVANT (§ 265*)—INJURIES TO SERVANT—DEFECTIVE APPLIANCE—RES IPSA LOQUITUR.

The rule that the doctrine of res ipsa loquitur has little, if any, application between employer and employé, is not of unvarying application.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 877–908, 955; Dec. Dig. § 265.*

Application of doctrine of res ipsa loquitur in actions for injuries to servants, see note to Carnegie Steel Co. v. Byers, 2 C. C. A. 121.]

3. MASTER AND SERVANT (§ 286*)—INJURIES TO SERVANT—DEFECTIVE APPLIANCE—QUESTION FOR JURY.

Where a servant was injured by the sudden telescoping of a car jack which had failed to work in the same manner before, which was not produced and the working machinery of which was inclosed, so that no one could tell in just what way it was defective, whether defendant was negligent in furnishing such a jack for use was for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. § 286.*]

4. MASTER AND SERVANT (§ 264*)—INJURIES TO SERVANT—DEFECTIVE APPLIANCE—SPECIFIC DEFECT.

In an action for injuries to a servant by the telescoping of a car jack, plaintiff alleged that the jack was old, worn, and defective; that the dogs and ratchets were worn, and on that account it was liable to slip when a weight was placed thereon, and that the jack, by reason of its weakness and its defects. suddenly slipped, and let the car down on plaintiff's hand. It was proved that the jack had slipped before and injured another servant; and that the working machinery was inclosed, so that one could not tell in just what way the jack was defective. Defendant's superintendent testified that the jack was capable of lifting the load, and that just what defect or weakness induced the accident would be difficult to determine. Defendant also concealed the jack and did not produce it at the trial. *Held,* that the general allegations that the jack was old, worn, and defective, and that it telescoped by reason of weakness, were not limited by the allegations as to the dogs and the ratchets.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 861–876; Dec. Dig. § 264.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. TRIAL (§ 191*)—INSTRUCTIONS—ASSUMPTION OF FACTS.

In an action for injuries to a servant by the telescoping of a car jack, an instruction assuming that defendant, charged with the duty of exercising ordinary care to furnish reasonably safe appliances, discharged that duty by furnishing for use together safe and utterly unsafe appliances, and was free from blame if the servant selected the unsafe one, the lack of safety of which was wholly concealed, was properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 420–431, 435; Dec. Dig. § 191.*]

6. TRIAL (§ 296*)—INSTRUCTIONS—ERROR CURED BY OTHER INSTRUCTION.

Where a servant was entitled to recover some amount if defendant knew of the defective condition of a jack by the collapse of which the servant was injured, or ought in the exercise of ordinary care to have known it, and such question was properly submitted to the jury, defendant was not prejudiced by an instruction erroneously charging that the master owed a positive duty to furnish reasonably safe appliances.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 705–713, 715, 716, 718; Dec. Dig. § 296.*]

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

Action by Joseph F. Barry against the American Car & Foundry Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Tyson S. Dines (M. F. Watts, Wm. R. Gentry, and Edwin W. Lee, on the brief), for plaintiff in error.

Herbert R. Marlatt (George S. Johnson, Charles A. Houts, and Harry B. Hawes, on the brief), for defendant in error.

Before HOOK and SMITH, Circuit Judges, and MARSHALL, District Judge.

SMITH, Circuit Judge. The plaintiff in error, the American Car & Foundry Company, hereafter called the defendant, is engaged at St. Louis in the manufacture of cars for various railroads. September 29, 1909, a flat car was complete and ready for delivery to the Western Pacific Railroad. It was discovered that sufficient room did not exist between the upper and lower bolsters to give the car the proper side motion.

Fabe White, who was a foreman in the employ of the defendant, called in Mr. Joseph F. Barry and others to assist in fixing it. Mr. Barry is the defendant in error, and will be hereafter called the plaintiff. One end of the car was raised on a jackscrew, and dirt and waste was thrown into the centerplate and the car let down. It was found too much had been placed in the centerplate, and the car then had too much side motion, and it was again raised, and Mr. Barry was sent under the car to remove some of the trash. While he was attempting to do this the jackscrew telescoped—that is, the stem slipped down in the frame—and Mr. Barry's hand was caught, and he received injuries that required the amputation of his fingers. Subsequently they failed to heal, and a second operation became necessary. He sued for $7,500 and the jury returned a verdict in his fa-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

vor for $5,000, upon which judgment was rendered, and the car company sued out this writ of error.

[1] The first assignment of error is based upon the admission of the testimony of two witnesses, St. Clair and Kelly, evidently offered for the purpose of showing that the jackscrew in question had been out of repair and operating in the same way for nearly three weeks.

Fabe White testified that they usually had two or three jacks, generally a screw and a couple of stepjacks. The jack in question was a stepjack. Mr. St. Clair testified that an accident happened to him nearly three weeks before with such a jack; that the jack with which the accident to him happened was a lever jack, had no cap on that he knew of; that the jack slipped, and the lever flew up and hit him, causing him to bleed in the mouth.

Sam Kelly testified that he was working at the defendant's factory; that he was working with St. Clair at the time he was hurt; that the jack used was a lever jack; that he had one side of the car jacked up and the jack slipped when he was laying it down and the lever flew up and hit him under the jaw; that that jack had no cap on it. He was also present at the time of the accident complained of, and testified that the jack was standing when the car came down the last time; that they attempted to raise the car after the accident, but were unable to do so until they sent for a screwjack; that he had seen the jack slip before aside from the time that St. Clair used it; that in raising it it would go such a distance, then it would not work any more, but slip back. Mr. Barry also testified there was no cap on the jack with which he was hurt, and that the jack was taken from track one or two, and that it was the only jack he had noticed that had the cap off. The jack was not produced on the trial, and the evidence was sufficient to identify the jack used by St. Clair with the one used at the time in question, and the evidence was admissible.

It is complained that the court failed to give the peremptory instruction asked for the defendant.

The jack in question was in use regularly upon the defendant's premises. About three weeks before the accident, as the jury had a right to find, St. Clair was using the same jack in raising a car when the jack slipped down and the handle flew up and hit him. When the accident to plaintiff took place, the stem slid down into the frame, and, when it was attempted to raise the car to release the plaintiff, the same thing took place.

[2] It will be conceded that between employer and employé the doctrine of res ipsa loquitur has little, if any application. Patton v. Texas & Pacific Railroad, 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361; Midland Valley Railroad Co. v. Fulgham, 181 Fed. 91, 104 C. C. A. 151; Carnegie Steel Co. v. Byers, 149 Fed. 667, 82 C. C. A. 115, 8 L. R. A. (N. S.) 677; Northern Pacific Railway Co. v. Dixon, 139 Fed. 737, 71 C. C. A. 555; Peirce v. Kile, 80 Fed. 865, 26 C. C. A. 201. This rule is, however, not of unvarying application. Palmer Brick Co. v. Chenall, 119 Ga. 837, 47 S. E. 329; Armour v. Golkowska, 202 Ill. 144, 66 N. E. 1037; Petrarca v. Quidnick, 27 R.

I. 265, 61 Atl. 648; Ross v. Double Shoals Cotton Mills, 140 N. C. 115, 52 S. E. 121, 1 L. R. A. (N. S.) 298; Fearington v. Blackwell Durham Tobacco Co., 141 N. C. 80, 53 S. E. 662, and other cases.

[3] The law must be deemed settled so far as this court is concerned by decisions of the Supreme Court and of this court, but the question recurs, Is it essential for the plaintiff to rely upon that maxim in this case? In Bradford Glycerine Co. v. Kizer, 113 Fed. 894, 51 C. C. A. 524, in an action by a servant against his master to recover for an injury caused by an explosion of nitroglycerine, it was an undisputed fact that the nitroglycerine exploded spontaneously, and there was evidence tending to show that, if pure and properly made, it would not so explode, but that it would, if impure. The court instructed the jury:

"When there is as in this case an explosion of this nitroglycerine, there is a presumption arises that it was from some inherent defect, something in the character of the nitroglycerine itself, due to surplus acid or some other cause, that made it explode, without the intervention of any other agency. Now, that being the presumption, unless that is explained by the evidence, you are warranted in coming to the conclusion that the defendant furnished the plaintiff with impure nitroglycerine, and in that departed from his duty as an employer."

The Court of Appeals said:

"Under the evidence in this case, there could be no claim that the cause of the accident could not be accounted for. It was accounted for if nitroglycerine, when properly manufactured, could not explode spontaneously, and this nitroglycerine did so explode. The jury were compelled to find the other necessary facts before they could infer negligence from the explosion. When that prima facie case was made, the burden of rebutting it was upon the defendant. The case does not come within the rule that the fact of accident carries with it no presumption of negligence on the part of the employer, laid down in Railroad Co. v. Barrett, 166 U. S. 617, 17 Sup. Ct. 707, 41 L. Ed. 1136, and Patton v. Railway Co., 179 U. S. 658, 663, 21 Sup. Ct. 275, 45 L. Ed. 361, nor within the cases in the state courts referred to in defendant's brief. Under the facts in this case, negligence in the manufacture of the nitroglycerine would be presumed in the absence of evidence showing care in the manufacture of it, as the explosion raises a presumption of negligence, if there is no explanation of the real cause for such explosion. Judson v. Powder Co., 107 Cal. 549, 40 Pac. 1020, 29 L. R. A. 718, 48 Am. St. Rep. 146, and the note to the same case in 29 L. R. A. 718; Schoepper v. Chemical Co., 113 Mich. 582, 71 N. W. 1081."

In the case at bar, suppose this same jack had acted in this same way 100 times through 100 weeks, could the company continue to use it and win all cases for accident by always saying that the doctrine of res ipsa loquitur does not apply? It is not pretended that in the use of such a jack as already described the stem will, upon the application of pressure, slide down into the frame.

The working machinery of the jack is inclosed in an outer case, so that no one could tell in just what way it was defective. That it was defective and would not work is beyond all question and the defendant, being in possession of the jack, failed to produce it that it might be determined just what was the matter with it, but that it was radically defective is clearly and abundantly shown, and that it had been in this defective condition for about three weeks. Under the circum-

stances we entertain no doubt that the evidence was sufficient to go to the jury.

[4] The plaintiff alleged the jack was old, worn, and defective; that the dogs and ratchets in said jack were worn, and on that account were liable to slip when a weight was put upon the said jack, and said jack, by reason of its weakness and its said defects, suddenly slipped and let the car down on plaintiff's hand. It is complained that plaintiff failed to show what was the matter with the jack and particularly failed to show that it was old, worn, and the dogs or ratchets were worn and liable to slip. It is, of course, conceded that ordinarily in actions between servant and master it is for the servant to show in what way the master was negligent, but in this case it is not claimed by defendant that the pressure upon the jack was excessive or beyond what it was devised to sustain. It must, of course, be conceded that ordinarily a 15-ton jack, such as this was, would not telescope under the weight of one end of a flat car. Mr. Shipley, superintendent for the defendant company, testified that "the jack was perfectly capable of lifting that load," but just what the defect or weakness was that induced such an accident would be difficult to determine. It only appears that the jack was radically defective or it would not telescope in the way it did. Surely under such circumstances it was sufficient for the plaintiff to allege the jack was defective and weak, and it does not lie in the mouth of defendant, the owner of the jack and in possession of it, to first conceal it, and then say you must now prove what was the matter within the inclosure of the jack or you must fail.

[5] Error is assigned upon the failure to give the following instruction:

"If you find from the evidence in this case that there were jacks furnished by the defendant for use by its employés which were reasonably safe and suitable for the purpose of raising a car to do the work in which plaintiff was engaged at the time of his injury, and if you further find from the evidence that plaintiff or his fellow servant, Brown or Fabe White, referred to in the evidence as track foreman, had access to jacks furnished by defendant, which were reasonably safe for said purpose, and that either said Fabe White or said Brown selected the jack which was being used at the time of the plaintiff's injury, then plaintiff is not entitled to recover, and your verdict must be for defendant."

It appears that were two stepjacks furnished, and it was sought to have the jury told that if there were suitable jacks and the plaintiff's fellow servants took the wrong one, and the accident occurred, no action would lie. This instruction assumed that an employer, charged with the duty of exercising ordinary care to furnish reasonably safe appliances, discharges that duty by furnishing for use together safe and utterly unsafe appliances, and is free from all blame if the employé selects the unsafe one, especially where the lack of safety is wholly concealed.

The defendant assigned as error the refusal to instruct that plaintiff could not recover, unless he showed the dogs or ratchets were worn and liable to slip. The allegation was that the jack was defective and weak, but defendant contends these general charges were

limited by the allegations as to the dogs and the ratchets. The allegations were not thus limited in their meaning under the circumstances of this case. United States Express Co. v. Wahl, 168 Fed. 848, 94 C. C. A. 260.

[6] It is finally urged that the court told the jury that the master owes a positive duty to furnish reasonably safe appliances for the employé to do the work that he is charged and directed to do. It is true this court has held that the master is bound only to use ordinary care to furnish reasonably safe appliances (Armour & Co. v. Russell, 144 Fed. 614, 75 C. C. A. 416, 6 L. R. A. [N. S.] 602), but the evidence clearly shows that the plaintiff was entitled to recover in some amount if the defendant knew of the defective condition of the jack, or ought, in the exercise of ordinary care, to have known of it. This question was properly submitted to the jury, and no prejudice could have resulted from anything the court said upon any other branch of the case. St. Louis, I. M. & S. Railroad Co. v. Needham, 69 Fed. 823, 16 C. C. A. 457; Choctaw, Oklahoma & Gulf Railroad Co. v. Tennessee, 116 Fed. 23, 53 C. C. A. 497.

The judgment is affirmed.