Merrimack, ⎱
Jan. 7, 1913. ⎰

### SANBORN v. BOSTON & MAINE RAILROAD.

Where an experienced servant, being directed to perform a duty which others have unsuccessfully attempted, voluntarily alters the position of a ladder which they have safely used, mounts it, and is immediately injured by reason of its slipping at the bottom, the only conclusion possible is that the accident was due to his imperfect adjustment of the ladder and that his lack of care was the sole proximate cause of his injury.

An employer who furnishes suitable tools and adequate means for making simple repairs necessitated by ordinary wear may entrust such repairs to servants as a part of their work, and is not liable for a negligent performance of the duty so delegated.

Where an injured servant alleges that by a custom of the shop the employees relied upon one of their number to repair certain tools, and seeks to make the master liable for a default in the performance of such duty, it is incumbent upon him to show specific instances of such a practice in order to charge the employer with a knowledge and adoption thereof.

A servant may recover for an injury caused by a defective condition of the master's instrumentalities due to ordinary wear or the negligence of fellow-servants, upon proof of his own freedom from fault and the master's knowledge or culpable ignorance of the danger in time to prevent the injury.

CASE, for negligence resulting in the plaintiff's injury while in the defendants' employ. Trial by jury and verdict for the plaintiff. Transferred from the October term, 1911, of the superior court by *Pike*, J., on the defendants' exceptions to the denial of their motions for a nonsuit and the direction of a verdict in their favor, to the refusal of the court to give certain requested instructions, and to portions of the charge. The defendants pleaded a release under seal, in consideration of $385 paid by them, which the plaintiff claims was obtained by fraud. The facts appear in the opinion.

*Robert W. Upton* (by brief and orally), for the plaintiff.

*Streeter, Demond & Woodworth* and *Foster & Lake* (*Mr. Woodworth* orally), for the defendants.

PARSONS, C. J. Upon the evidence it could not be found that the plaintiff was ignorant or inexperienced. He was a man of intelligence and had been employed in the defendants' shops some

seven years at the time of the injury. He was a "mill man" or "floor man" and had had experience in operating all the machines in the shop where he was employed. At times, in the absence of the foreman, he had been left in charge of the room in which some twenty men were at work. There was no evidence that he was not a skilled mechanic conversant with and fully competent to execute the work in which he was engaged. On the day of the accident other employees had been for some time unsuccessfully attempting to place a belt upon a pulley upon an overhead shaft, when Sanborn was directed to undertake the job. The plaintiff went to the ladder which was being used for access to the pulley and changed its position. As he testified, he "picked the ladder up and set it down on the floor and started up." When he reached the top and was about to begin work, the ladder "slipped out at the bottom" and fell, and the plaintiff received the injury complained of. Prior to this the other workmen had been engaged some time—"three fourths of an hour"—upon the work, and there was no evidence that the ladder as they had placed it did not stand firm.

In this state of the evidence, the only conclusion possible is that the slipping of the ladder was due to the change in position made by Sanborn, or to his failure to use the precautions against slipping at the foot taken by the other workmen. That a ladder may and probably will fall when erected for use if the foot is not properly secured is matter of common knowledge, of which Sanborn, as a skilled mechanic, was not ignorant. The position of the ladder when Sanborn mounted it was a temporary one for this particular service. Ordinarily it was kept and used in another part of the shop. As he did not accept the ladder as placed by the other workmen, he cannot claim that when he used it it was a staging erected by other workmen representing the master, for whose lack of care he (Sanborn) was not responsible, because he rejected their adjustment of the ladder for one of his own. If due weight is given to its previous stability for so long a time and to the fact that it fell as soon as it was in use as Sanborn placed it, the only conclusion possible is that if he had not changed the position of the ladder it would not have fallen, and hence that his own lack of care in placing the ladder was the sole proximate cause of his injury. It is hardly conceivable that a reasonably careful man of the plaintiff's intelligence and experience should not have known, when he "set" the ladder "down on the floor," that the spurs attached to the foot of the ladder did not enter the floor or hold it securely for the use he

was to make of it. If for any reason he was not aware of that fact, his ignorance is imputable to such a lack of perception or such negligent conduct as no prudent man would be guilty of under similar circumstances.

The case might be left here; but there was evidence from which it is argued that the defendants' fault and Sanborn's freedom from fault as the legal cause of the injury could be found. It appeared that for use in connection with the overhead shafting ladders were necessary and several were provided. Some were kept at particular machines for use with such machines; others were for general use throughout the shop. One—the ladder in question—was kept by a machine called the four-sided planer; but being the only long ladder in the shop, it was occasionally used elsewhere whenever a ladder of that length was required. So far as appears, the ladders furnished were suitable for the purpose, and were equipped with iron spurs bolted to the foot of the ladder and pointed so that the spurs could be made to penetrate the floor, which was of hard wood, and so hold the foot of the ladder from slipping when the ladder was erected for use. As the spurs might become dulled by use so as not to readily penetrate the floor, the defendants provided files and emery wheels with which to sharpen them. The operation of sharpening was a simple one which the plaintiff understood and had performed. The defendants made no rule as to the sharpening of the spurs and provided no inspection as to their condition. The substance of the evidence is that the defendants, having work to be done requiring the use of ladders, employed competent men, furnished suitable ladders and the means to fit them for the use that might be required from time to time, and left the whole to the workmen as part of the work. After the accident it was discovered that the spurs of this ladder measured one quarter and three eighths of an inch respectively at the points. It did not appear how fine the points should have been to be called sharp, but it appears to have been conceded that the spurs of this ladder were dull. The contention is that if the spurs had been sharp they would have penetrated the floor when Sanborn replaced the ladder and would have held its foot; while Sanborn's freedom from fault in failing to discover that the ladder was firmly held before he mounted is claimed, upon his understanding that from the practice or custom of the shop the man at whose machine the ladder was kept sharpened the spurs. The defendants made their defence upon the ground that, as matter of law and upon the facts, it was not their duty to sharpen the

spurs. Subject to their exception, the case was left to the jury upon the theory that it was the master's duty to furnish Sanborn a ladder with sharp spurs when he undertook the adjustment of the belt.

The obligation of the master to furnish his servants suitable instrumentalities for the work (*McLaine* v. *Company*, 71 N. H. 294, 296) does not require him to do the work. Hence if the work involves the preparation of a work-place, providing such a place is the duty of the servant and not of the master. The master's duty ends with providing suitable tools and materials for such purpose. *Manning* v. *Manchester Mills*, 70 N. H. 582; *Robichaud* v. *Mendell*, 75 N. H. 391. As the selection of suitable tools or materials out of a sufficient supply of suitable ones provided by the master is part of the work, so is the selection of a particular workman for a special task when competent ones are furnished. *Hilton* v. *Railroad*, 73 N. H. 116. The making of repairs which requires special skill and experience is the master's duty because it is not a part of the work the inexperienced servant is employed to perform. *Jaques* v. *Company*, 66 N. H. 482.

"In many kinds of service the care and keeping of tools and machinery in a condition of safety require merely the attention and repairs occasioned by ordinary use and wear, and are properly a part of the regular business of the servant engaged in the use of such tools and machinery. In such cases the duty of the employer is performed by furnishing safe tools and machinery and the means of making needed repairs, and the duty of making the repairs may be entrusted to servants, and any neglect in the performance of this service is the negligence of a servant." *Jaques* v. *Company, supra,* 484. If the foregoing statement made by this court in 1891 is the law, it disposes of the fundamental question whether the keeping of common tools in condition for use may be entrusted to servants as a part of the work of using such tools. It is true this statement is in a sense *dictum*, because the decision was that the negligent repair complained of was not a part of the work; but the rule then stated involves the principle upon which the later cases of *Manning* v. *Manchester Mills*, 70 N. H. 582, *McLaine* v. *Company*, 71 N. H. 294, *Galvin* v. *Pierce*, 72 N. H. 79, *Robichaud* v. *Mendell*, 75 N. H. 391, and others, were determined. In short, was the matter in question one of service, part of the work, or a masterful act? *Wallace* v. *Railroad*, 72 N. H. 504; *Tilley* v. *Company*, 74 N. H. 316, 317, 318, and cases cited.

The concrete question applicable to the present case is whether

such inspection and repair as was necessary to keep the ladders fit for use was or was not a duty which might be delegated to a servant. "The principle involved in determining whether the act in question is one of service or mastership is not 'derived from exact or ingenious definitions of the words place, tools, or appliances, however convenient and useful they may be in a particular case, but from considerations of the requirements of ordinary and reasonable care on the part of both the employer and the employee. If as a matter of fact a particular course of conduct of the master toward his servant is unreasonable when measured by the conduct of men in general engaged in similar occupations, he cannot shield himself as a matter of law from the consequences of such conduct by a resort to verbal distinctions which oftener serve to obscure than to elucidate legal principles.' *English* v. *Amidon*, 72 N. H. 301, 303, 304. Similarly, if it is plainly unreasonable that a particular duty should be personally imposed upon the master, such imposition cannot be derived from the extension of the duty beyond what can fairly be termed reasonable by logical deduction from the terms ordinarily employed in defining the duty." *Hilton* v. *Railroad*, 73 N. H. 116, 119.

Whether it is reasonable to conclude that a master, having furnished competent servants with simple tools and the means to repair the effects of use, is also bound to follow the work to see that the servants employ the appliances which he has furnished for the repair, depends upon whether that is what the ordinary man does. Such is not the usual course. The lumberman does not follow the choppers into the woods to see that their axes are kept sharp; the farmer does not stay with the mower in the field to oversee proper use of whetstone and rifle. The keeping of simple tools in order for use is a part of the work; and when the necessary "inspection and repair is incidental to the use of the appliance, *i. e.*, is a part of the work of its use, such inspection and repair is the duty of the servant." *McLaine* v. *Company*, 71 N. H. 294, 296. It seems hardly necessary to suggest that a ladder, like an axe, saw, spade, or hoe, is a simple tool, but that point has been adjudicated. *Cahill* v. *Hilton*, 106 N. Y. 512, 518; *Borden* v. *Company*, 98 Wis. 407, 411,—67 Am. St. Rep. 816, 819. The degree of sharpness of the spurs necessary at a particular time would depend upon the particular use to which the ladder was to be put. The determination of the amount of repair necessary at any time and the making

of it was hence peculiarly a part of the work.  4 Thomp. Com. Neg., *s*. 3999.

The making of simple repairs is a delegable duty, not because of its simplicity, but because such service may be a part of the work. When the repair is not made as a part of the work the servant is employed to do, but is made independently by the master or by others under his direction, such repair may become the master's act, not because it cannot be delegated, but because it is not. In such case the master would be responsible for the negligence in the performance of the duty so undertaken. Whether the contract is the one thing or the other may be without dispute. The master's undertaking may be conceded, as in *Thompson* v. *Bartlett*, 71 N. H. 174; the evidence may present a question for the jury, as in *Haakensen* v. *Company, ante*, 443. But the burden being on the plaintiff, to go to the jury it is necessary for him to present some evidence of the master's special contract; in this case, an agreement to provide his servants with ladders sharply spurred at all times, or at least to furnish on this occasion a ladder with sharp spurs. The case discloses no direct evidence of such a contract; but it was claimed that there was evidence from which it could be found that the defendants employed Drowns, the man in charge of the four-sided planer where this ladder was kept, to keep the spurs on this ladder sharp for whoever might have occasion to use it. There is no claim of any direct evidence to this effect; but the contention is that there was a custom or practice in the shop for him to do so, which was so notorious and long continued that the defendants could be found to have known and to have adopted it, so that Drowns' failure to perform the duty was their default. The evidence both from the plaintiff himself and other witnesses was that the ladders kept at special machines were regarded as part of the equipment of the machines, or tools belonging to the machines, which it was the duty of the man at the machine to keep in order. But this does not imply that it was the practice of any of these men to do more than keep the ladders fit for use at their machines. It is conceded that the spurs on ladders used generally throughout the shop were sharpened by whoever had occasion to use them. There was no evidence that the spurs upon this ladder were not sharp enough for safe use at the four-sided planer, where the floor was roughened by its frequent use. There was no evidence that Drowns or any man at the four-sided planer had ever sharpened this ladder for use elsewhere, or understood it was his duty by custom or otherwise to do so.

Relying upon a custom to establish the defendants' duty, the plaintiff does not meet the burden of proof without showing at least one instance in which the custom was followed. If Sanborn's testimony, that he did not examine the spurs because he understood it was the duty of the man at whose machine the ladder was kept to keep the spurs sharp, is sufficient to prove his care, it does not warrant the conclusion that the master assumed that duty, no more than if, using a ladder not kept at a machine, he had neglected to make such examination because he knew it was in use the day before by a competent man who would have sharpened the spurs if necessary. If such had been the case, the failure of such workman to make a repair necessary for his use of the tool would not have been the master's default. Neither would Drowns' failure to keep the ladder in condition for his work, if such had been proved, be the master's default. Neither is Sanborn's testimony of the understanding of himself or others as to the duty of the man who worked at a machine to care for the ladder kept there, even in the broad statement finally made upon cross-examination, sufficient to charge the defendants with the assumption of the duty of keeping the spurs sharp.

The plaintiff seeks to charge the defendants with responsibility for a practice in the shop in conflict with the fact as to the engagements directly made. If it was the fact that the workmen in the shop had the practice or custom of using this ladder without examining the spurs, relying upon Drowns to keep them sharp, the case contains no evidence of such custom or practice. So far as appears, this was the first and only instance of such action. The contract between the parties is not be varied by proof of the understanding of one without evidence of some acts tending to bring such understanding to the notice of the other. In *Disalets* v. *Company*, 74 N. H. 440, the plaintiff, an inexperienced workman injured through the use of an unsuitable tool in common use in the defendants' mill, being ignorant of the danger, was permitted to recover, and it was said that from the common use it could be found that the defendants furnished such tool for use. In this case, as just suggested, there is no evidence of common use of this ladder in reliance upon Drowns keeping the spurs sharp, and it cannot be found that the defendants furnished the ladder at the time of the accident.

But although the cause of the servant's injury is a condition of the master's instrumentalities due to ordinary wear or the negligence of fellow-servants, he still may recover if he can show his

own freedom from fault and the master's knowledge or culpable ignorance of the danger in time to prevent the injury.   *Klineintie* v. *Company*, 74 N. H. 276; *Leazotte* v. *Company*, 74 N. H. 480. But the plaintiff knew all that the defendants did.   They are not in fault for not informing him of facts essential to his safety which he knew.   He was an experienced man.   He knew that the spurs might become dull by use and that if dull they might not hold securely, that according to his claim the sharpening of the spurs was left to the man in charge of the machine at which the ladder was kept, and that no inspection was made from time to time to ascertain if the spurs were sharp.   Knowing these things, he stands precisely as if he had been specially warned.   If he had been told before he mounted the ladder that the defendants had made no inspection of the ladder and did not know whether the spurs were sharp enough to hold, he would have been given no information he did not already possess.   He did not rely on the absence of warning or upon inspection by the defendants, for he testified that he knew there was no inspection.

The defendants were entitled to a verdict on the issue of negligence.   That result renders it unnecessary to consider the validity of the verdict on the issue of fraud.

*Exceptions sustained: verdict set aside: verdict and judgment for the defendants.*

BINGHAM and PEASLEE, JJ., dissented:   the others concurred.