### MISSOURI VALLEY BRIDGE & IRON CO. v. NUNNEMAKER.

(Circuit Court of Appeals, Eighth Circuit. November 5, 1913.)

No. 3,766.

1. MASTER AND SERVANT (§ 190*)—MASTER'S LIABILITY FOR INJURY TO SERVANT —UNSAFE APPLIANCES.

Where the superintendent in charge of defendant's work in the construction of a bridge approach directed an employé to repair certain mauls which had become defective in use, which he did by putting new handles in them, in doing such work he represented defendant, and whatever his regular employment might have been was not a fellow servant of another employé who was afterward injured because one of the handles was insufficiently wedged, permitting the maul head to fly off in use.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 449– 474; Dec. Dig. § 190.*]

2. MASTER AND SERVANT (§ 295*)—ACTION FOR INJURY TO SERVANT—INSTRUCTIONS—DEFECTIVE APPLIANCES.

Instructions, in an action for injury to a servant through a defective appliance, that plaintiff had a right to rely upon the duty of defendant to exercise reasonable care to see that the appliance was in safe condition, having been performed, and was not chargeable with assumption of the risk unless he knew of the defect or it was obvious, *held* not erroneous.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1168– 1179; Dec. Dig. § 295.*]

In Error to the District Court of the United States for the Eastern District of Missouri.

Action at law by T. W. Nunnemaker against the Missouri Valley Bridge & Iron Company. Judgment for plaintiff, and defendant brings error. Affirmed.

J. Lionberger Davis, of St. Louis, Mo. (Allen C. Orrick, Jones, Hocker, Hawes & Angert, and Nagel & Kirby, all of St. Louis, Mo., on the brief), for plaintiff in error.

William T. Nardin, of St. Louis, Mo. (Wilfley, Wilfley, McIntyre & Nardin, of St. Louis, Mo., on the brief), for defendant in error.

Before HOOK and SMITH, Circuit Judges, and VAN VALKEN-BURGH, District Judge.

SMITH, Circuit Judge. The Missouri Valley Bridge & Iron Company, plaintiff in error, hereafter called the defendant, had contracts by

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

which it was to construct the so-called McKinley bridge at St. Louis. Mo., and the approach thereto on the Missouri side. The defendant had taken two separate contracts, one to build the bridge and one to build the approach thereto. These contracts were not only separate but their execution was largely kept separate. T. W. Cartledge was superintendent of construction of the approach and had two foremen under him, John B. Ryker and Henry Smith. There were separate superintendent and foremen for the bridge proper. There was a blacksmith shop under the superintendent of the bridge proper at which some work was occasionally done for the approach. There was also a supply house near thereto, both standing near the river. Some blocks west and more convenient to the approach was the office of Superintendent Cartledge, and a portion of this building was occupied as a tool house and shop for the repair of tools used on the approach. T. W. Nunnemaker, the defendant in error, hereafter called the plaintiff, was a structural iron worker employed on the approach. On March 30th Mr. Ryker, the defendant's foreman, wishing plaintiff to make some repairs, told him what to do and to get the necessary tools. The work required the use of mauls and a long chisel, and he went down to the tool house, where tools ready for use were kept, and sought to find a seven-pound maul, but being unable to do so took two eight-pound mauls from among five and a chisel or cutter and returned to the work. Some trolley polls had been bent, and it was necessary to take these down and send them to be straightened. When plaintiff returned to the scene he was sent to assist the engineer on the derrick car near by. He was detained there about half an hour, during which time two men were engaged in cutting off rivets; one man holding the chisel or cutter and the other striking it with the maul. At the end of this service on the derrick plaintiff was transferred to the cutting of rivets. He held the chisel or cutter and a man named Hayes struck it with the maul. On his striking the second time the head of the maul flew off before it reached the chisel or cutter, struck the plaintiff, and knocked him off the approach about 30 feet to the ground below. He was seriously injured by the blow from the head of the maul, the fall, and the impact with the place beneath. This suit was brought for damages; the petition alleging that the maul in question was defectively repaired by the defendant in that the end of the handle which entered the head of the maul had been shaped too nearly to a point, thus leaving the handle loose in the head, the metal wedge which was driven into the handle where it passed through the head of the maul was so short and blunt that it did not properly swell the handle and make it secure and fast, and by reason of the shortness and bluntness of the wedge it did not become securely fastened in the wood of the handle and did not remain in the handle, and said wedge loosened by use and dropped out, permitting and causing the head to fly from the handle and inflict the injury of which the plaintiff complains, and that such defective condition was known, or in the exercise of ordinary care should have been known, to the defendant. There was an answer containing a general denial and pleading that the plaintiff assumed the risk and that he was guilty of contributory negligence. There was a

trial, a verdict and judgment for the plaintiff, and the defendant brought the case here on error, assigning as such the overruling of the motion to direct a verdict and the giving of portions of the charge and the refusal to give the instructions asked.

[1] It was the duty of the defendant to use reasonable care to see that tools furnished to employés were reasonably safe for their use. Armour & Co. v. Russell, 144 Fed. 614, 75 C. C. A. 416, 6 L. R. A. (N. S.) 602; American Car & Foundry Co. v. Barry, 195 Fed. 919, 115 C. C. A. 607; Hough v. Railway Co., 100 U. S. 213, 25 L. Ed. 612.

It appears that the men who used the mauls had nothing to do with their repair. Originally they were delivered to them as finished mauls, and when they became out of repair they were cast aside and good mauls taken. The superintendent, Mr. Cartledge, ordered that Mr. Rudolph Ganshaw, who was a hoisting engineer, handle up some mauls that were broken. Mr. Ganshaw took about five mauls to the repair shop at Superintendent Cartledge's office and there put new handles in them. All these handles were properly inserted but one. In shaping the handle of that one by reason of the grain of the wood it split off somewhat too much at the end that went through the head. Mr. Ganshaw then found he had only one wedge, and that a somewhat narrow, short, and blunt one. He went down to the blacksmith shop to get another. The blacksmith told him he had none and no time to make any. Ganshaw then went back and used the one he had. This is the particular maul the head of which came off, inflicting injuries on the plaintiff.

While it is true that ordinarily the law requires the exercise of reasonable or ordinary care to provide a reasonably safe place to work and the same degree of care to furnish reasonably safe appliances for the work, and also requires, in the exercise of such care, continuous inspection by the master of the place and appliances, this is not true of what are called simple tools, such as ordinary hammers, chisels, shovels, and the like. Wachsmuth v. Shaw Electric Crane Co., 118 Mich. 275, 76 N. W. 497; Vanderpool v. Partridge, 79 Neb. 165, 112 N. W. 318, 13 L. R. A. (N. S.) 668; Ruck v. C., M. & St. P. Ry. Co. (Wis.) 140 N. W. 1074; Lehman v. Chicago, St. P., M. & O. Ry. Co., 140 Wis. 497, 122 N. W. 1059; Meyer v. Ladewig, 130 Wis. 566, 110 N. W. 419, 13 L. R. A. (N. S.) 684; Stork v. Stolper Cooperage Co., 127 Wis. 318, 106 N. W. 841, 7 Ann. Cas. 339; Twombly v. Consolidated Electric Light Co., 98 Me. 353, 57 Atl. 85, 64 L. R. A. 551; American Car & Foundry Co. v. Fess (Ind. App.) 101 N. E. 318.

But here the question is not whether the master was compelled to constantly inspect these mauls or not. This maul, at some time anterior to the accident, was broken, and the defendant's superintendent ordered it repaired. That was the duty of the master, and whoever he assigned to do it was in the place of the master, whatever may have been his usual vocation. That is, he might have been ordinarily a fellow servant of the plaintiff, but in attempting to repair the maul he was acting in the place of the master, doing its duty, and the master was liable for what the servant did in such repairing. There is no doubt that if Cartledge and Ganshaw were negligent in repairing this maul, and it was then returned to the place where the defendant's

servants had been charged to go and get mauls, then the defendant was liable for the result of such negligence. Lehigh Valley Coal Co. v. Warrek, 84 Fed. 866–868, 28 C. C. A. 540. It follows the court properly overruled the motion to direct a verdict.

It is insisted, however, that, if there was any doubt about the character of the tool or the custom of repairing such tools, a mixed question of law and fact would have been raised which should have been submitted to the jury by the court. Sowles v. Norcross Bros. Co., 195 Fed. 889, 115 C. C. A. 577. We are of the opinion that, conceding the maul to have been a simple tool, there was no dispute in the testimony as to the custom of repairing such tools, but in any event the defendant failed to ask any instruction upon that subject and cannot now complain.

[2] The court instructed the jury:

"A primary duty rests upon every employer of labor (that is, upon the master) to exercise reasonable care to provide reasonably safe appliances with which the servants shall work, and also reasonably safe places in which they shall work."

And:

"If, however, the servant knew at the time he entered the employment, or prior to the time of his injury, of the defective condition of the appliances, or dangerous situation in which he was put to work, or unless the said defective or dangerous condition was patent, obvious, and plain before his eyes, in either of these events (that is, in the event he knew of the dangerous condition, or in the event it was patent or plainly before him) he cannot recover. The servant has a right to rely upon the master's performing the primary and fundamental duty before stated. No obligation is cast upon the servant to use what is commonly called 'ordinary care' to inspect the premises or appliances with a view of ascertaining whether or not they are safe. He has a right to rely upon their being safe, and hence the ordinary obligation resting upon plaintiff in many other suits, namely, the exercise of ordinary care to find out whether the appliances are safe, does not rest upon him. This, however, does not relieve him from the consequences of entering into the discharge of the duty, when the danger is patent and open before him, or he knew of that danger."

And:

"If you find from the evidence in the case that the maul was not securely fastened to the handle, and that the plaintiff knew this before he was struck and injured, he cannot recover; or if the defect, if any existed, was patent or readily observable by the plaintiff before he was injured, then he cannot recover."

And again:

"There is in this case, then, no assumption of risk upon his part if he was at work on that bridge and was relying upon the master to furnish him reasonably safe appliances with which to work."

And also:

"The plaintiff had a perfect right to rely upon the tools that were furnished him being in good condition, provided he did not see, or could not see, the condition in which it was at the time he examined it."

Complaint is made of the second, fourth, and fifth subdivisions on the ground that they made of the defendant an insurer or guarantor of the safety of the tool or maul which injured the plaintiff. In this

we cannot concur. Taken together, the charge fully stated the law applicable to this case. The instructions complained of were upon the burden resting upon the plaintiff, not upon the obligations resting upon the defendant. As was natural, the court distinguished between the two and stated the obligations resting upon the defendant correctly, and in stating the obligations resting upon the plaintiff the omission of those resting upon the other party could not have been error. St. Louis, I. M. & S. Ry. Co. v. Needham et al., 69 Fed. 823, 16 C. C. A. 457; Choctaw, O. & G. R. Co. v. Tennessee, 116 Fed. 23, 53 C. C. A. 497.

There is no evidence of contributory negligence on plaintiff's part or of assumption of risk by him that is here material. He had the right to assume that the maul had been properly repaired. He was not obliged to examine into the methods by which it had been repaired. Kreigh v. Westinghouse, Church, Kerr & Co., 214 U. S. 249, 29 Sup. Ct. 619, 53 L. Ed. 984; Texas & Pacific Ry. Co. v. Howell, 224 U. S. 577, 32 Sup. Ct. 601, 56 L. Ed. 892; Choctaw, Oklahoma & Gulf R. R. Co. v. McDade, 191 U. S. 64, 24 Sup. Ct. 24, 48 L. Ed. 96; Alaska Pacific S. S. Co. v. Egan, 202 Fed. 867, 121 C. C. A. 225. He did not observe the maul except to see if the repair had been completed by the insertion of a wedge. It would have required a quite critical examination, if not an impossible one, after the wedge had been driven in to determine whether the handle had been cut too small, and it would have been quite impossible to tell how far the wedge went in and whether it was blunt or sharp. This maul as prepared was inherently dangerous, and there was no possibility of plaintiff knowing in full its condition. It is true the evidence shows the handle was somewhat too finely shaved, but it does not appear that it was not spread so as to wholly fill the extreme end of the maul opposite the handle, and there is no evidence that the plaintiff saw or noticed its condition in that regard. True the wedge was somewhat narrow, but there appears no reason to believe that the maul was unsafe by reason thereof if the handle was swelled to the size of the end of the maul and the wedge was sufficiently long and tapering to hold itself and the handle in. Questions with reference to obvious defects have therefore no application.

Complaint is made that the court failed to instruct the jury that, if plaintiff knew the maul was defective and dangerous, he could not recover, but there was no evidence that he knew that fact, and it would have been error to so instruct the jury.

No other points are suggested which seem worthy of separate consideration. No error appears, and the judgment is affirmed.

HOOK, Circuit Judge, took no part in the decision of this case.