# COOPER *v.* PENN BRIDGE COMPANY.

INJURY TO EMPLOYEE; VICE PRINCIPAL; ASSUMPTION OF RISK; ORDERING USE OF DEFECTIVE TOOL.

1. A foreman in actual charge of the erection of a structural iron-bridge span and the removal of an old span, a mass of structural iron 140 feet long, 18½ feet high, and weighing many tons, and who has complete charge of the men, hiring, paying, and discharging them, is to be regarded as a vice principal notwithstanding the fact that the president of the company that was doing the work visited it a few times and received reports of the work from the foreman. (Citing *Collins* v. *John W. Danforth Co.* 36 App. D. C. 592 )

2. A workman in structural iron work called a "pusher" who comes next to the foreman and works right with the men, sees that the work goes along, and that everybody keeps working, becomes himself the representative of the employer when the work is left under his supervision by the employer's direction during the foreman's absence.

3. An employee's assumption of risk does not extend to the danger from a defective tool in the hands of a fellow workman who is using it by deliberate order of the master's representative, who knew of its dangerous condition.

4. The court again calls attention to the desirability of the practice of taking a verdict of the jury subject to the opinion of the court as provided for by rule 52 of the trial court, instead of directing a verdict for the plaintiff, in order that a trial *de novo* may not be necessary in case of reversal on appeal. (Citing *McNamara* v. *Washington Terminal Co.* 37 App. D. C. 384; *Burke* v. *District of Columbia*, 42 App. D. C. 438.)

No. 3084. Submitted February 8, 1918. Decided March 4, 1918.

NOTE—On the doctrine that all superior servants are vice principals as regards their subordinates, see note in 51 L.R.A. 539.

For authorities discussing the question of servant's right of action for injuries received in obeying direct command, see notes in 48 L.R.A. 753, and 30 L.R.A.(N.S.) 437.

On master's liability for injury by defect in common tools, see notes in 13 L.R.A.(N.S.) 668; 40 L.R.A.(N.S.) 832, and 51 L.R.A.(N.S.) 337.

HEARING on an appeal from a judgment of the Supreme Court on directed verdict for the defendant, in an action for damages for personal injuries.     *Reversed and remanded.*

The COURT in the opinion stated the facts as follows:

This action was for damages for personal injuries, and resulted in a directed verdict for the defendant at the close of the introduction of the evidence, which tended to establish the following:

The defendant, the Penn Bridge Company, a corporation engaged in structural iron-bridge work, with shops at Claytonsville and Beavers Falls, Pennsylvania, has maintained an office in the city of Washington for many years, and its president, Mr. Samuel P. White, a resident of New Brighton, Pennsylvania, has had charge of this office and supervision of work in the District of Columbia. The company procured the contract for putting in a new overhead iron span in place of the underhung span in the Pennsylvania avenue bridge, extending over the eastern branch of the Potomac river. The length of these spans was 140 feet. When the new span was placed in position the old or underhung span, which was 18½ feet from top to bottom, was lowered to a barge and taken apart.

On July 5, 1915, William C. Hoffman, who was to be the foreman in actual charge of the above work, came to Washington and caused to be sent here the necessary tools, among which were several eight-pound sledges or mauls with hickory handles. Subsequently Mr. Hoffman purchased two similar mauls and handles, and properly "put them together on the job." He also purchased four extra handles, as "some of the handles had been broken and the men who broke them fixed them themselves." It was Mr. Hoffman's duty to hire, lay off, and pay the men. Among the fifteen or twenty employees on this job were the plaintiff, appellant here, and a Mr. J. H. Hoover, whose work during Hoffman's presence was that of pusher. There was evidence by the defendant "that a pusher in the structural iron work *is a man that comes next to the*

*foreman,* works right with the men, and sees that the work goes along, and sees that everybody keeps working."

Work commenced immediately after Hoffman's arrival, and when he left on August 7th the new span was in place and nearly completed, and the old span had just been lowered to the barge by the side of the bridge. During the month that Hoffman was in charge of this work Mr. White, president of the company, "was down to the job three or four times" according to Mr. Hoffman's recollection. According to Mr. White's recollection he was in Washington five or six times from the 7th of July to the 10th of August, and on those occasions received a report from Hoffman, "either by going there (to the bridge) or by him coming to the office." When Hoffman left on the 7th of August he was directed by Mr. White to leave in charge Hoover and Adam Hoffman, a timekeeper; and this he did, although it is apparent from the evidence that Hoover was the real foreman.

On the morning of August 10th a workman by the name of Galloway went to the tool box for a maul, and found but one, the handle of which, according to some of the witnesses, was not and had not been wedged. Three witnesses testified that Galloway thereupon called the matter to the attention of Hoover, telling him not only that there was no wedge in the handle, but that the handle was loose, and that as Galloway was to work at the top of the old span, which, as previously noted, was 18½ feet from the bottom of the span where other men were to work, it would not be safe to use the maul in its then condition. These three witnesses testified that, notwithstanding this notice, Hoover directed Galloway to use the maul, as there was no other. According to one of the witnesses Hoover said Galloway "would have to work with it; that it was the best they had." According to another witness "Hoover said that they did not have time to fix it; that they had to get the work done, and the work out." Thereupon Galloway took the maul and went to work. Every few moments throughout the day the maul would work loose or come off the handle, when it would be necessary to drive it on again. From Hoover's position he could not have failed to observe this. About 4:30 in

the afternoon, as Galloway was using the maul it flew off the handle and struck the head of the plaintiff, then working at the foot of the span, directly beneath, injuring him very seriously and permanently. Plaintiff testified that he did not hear any conversation between Galloway and Hoover about the condition of the maul, nor did he know that the maul was loose on the handle; that if he had he would not have worked beneath Galloway.

*Mr. W. Gwynn Gardiner, Mr. Blaine Coppinger,* and *Mr. Le Roy Pumphrey,* for the appellant, in their brief cited:

*Hough* v. *Texas & P. R. Co.* 100 U. S. 213; *Choctaw, O. & G. R. Co.* v. *McDade,* 191 U. S. 64; *Northern P. R. Co.* v. *Charless,* 162 U. S. 359; *Union P. R. Co.* v. *Snyder,* 152 U. S. 684; *Deserant* v. *Cerillos Coal R. Co.* 178 U. S. 409; *Kreigh* v. *Westinghouse, C. K. & Co.* 214 U. S. 249; *Gila Valley, G. & N. R. Co.* v. *Hall,* 232 U. S. 94, 101; *Missouri Valley Bridge & Iron Co.* v. *Nunnemaker,* 209 Fed. 34; *Maguire-Penniman Co.* v. *Lombard,* 195 Fed. 479; *Southern P. Co.* v. *De Valle Da Costa,* 190 Fed. 698; *Daley* v. *R. R. Co.* 167 Fed. 592; *Chicago R. Co.* v. *Donavan,* 160 Fed. 826; *Bishop Co.* v. *Dodson,* 153 Fed. 128; 40 Cyc. 2593; *Re Kimberg,* 207 N. Y. 226; *Elwood* v. *Western Union Co.* 45 N. Y. 549; *Volkman* v. *M. R. Co.* 134 N. Y. 422; *Swidall* v. *Ford,* 63 So. 651; *Wichita Falls Traction Co.* v. *Berry,* 187 S. W. 416; *Sonnetheil* v. *Christian Moerlien Brewing Co.* 172 U. S. 401, 408; Jones, Ev., sec. 901; *Williams* v. *Huntington,* 68 Md. 598; *Young* v. *United Cigar Store Co.* 36 App. D. C. 390; *Costikyan* v. *Sloan,* 33 App. D. C. 426; *Allen* v. *St. Louis Nat. Bank,* 120 U. S. 20, 39.

*Mr. Frank J. Hogan* and *Mr. William H. Donovan,* for the appellee, in their brief cited:

*Alaska Min. Co.* v. *Whelan,* 168 U. S. 86, 89; *American Bridge Co.* v. *Seeds,* 144 Fed. 605; *American Car & Foundry Co.* v. *Nachaud,* — Ind. —, 93 N. E. 1083; *Anderson* v. *Smith,*

35 App. D. C. 93; *Atchison, T. & S. F. R. Co.* v. *Moore,* 29 Kan. 644; *Ball* v. *United States Exp. Co.* 32 App. D. C. 182; *Baltimore & O. R. Co.* v. *Baugh,* 149 U. S. 368, 387; *Benzler* v. *Ferguson Co.* — N. J. —, 72 Atl. 27; *Central R. Co.* v. *Keegan,* 160 U. S. 259, 266; *Cole* v. *German Sav. & L. Soc.* 124 Fed. 113; *Colen* v. *Gladding,* — Cal. —, 136 Pac. 289; *Collins* v. *Danforth,* 36 App. D. C. 596; 26 Cyc. 1138, 1302, 1332; *Finlayson* v. *Utica Min. & Mill. Co.* 67 Fed. 507; *Florence & C. C. R. Co.* v. *Whipps,* 138 Fed. 13; *Fordyce Lumber Co.* v. *Lynn,* — Ark. —, 158 S. W. 501; *Garnett* v. *Phœnix Bridge Co.* 98 Fed. 192; *Goodlander* v. *Standard Oil Co.* 63 Fed. 401; *Herricks* v. *C. & E. I. R. Co.* 257 Ill. 267; *Higgins* v. *Higgins,* 188 Mass. 113; *Hodges* v. *Kimball,* 104 Fed. 745; *Hough* v. *R. Co.* 100 U. S. 213; *Isaacson* v. *Wisconsin Teleph. Co.* 138 Wis. 65; *Johnson* v. *Boston Tow Boat Co.* 135 Mass. 209; *Koschman* v. *Ash,* — Minn. —, 108 N. W. 514; Labatt, Mast. & S. sec. 154, p. 331; *Leishmann* v. *Union Iron Works,* 148 Cal. 274; *Martin* v. *Mfg. Co.* 128 N. C. 265; *Masich* v. *American Smelting & Ref. Co.* 118 Pac. 764; *McDonald* v. *Buckley,* 109 Fed. 292; *McMillan* v. *Minetto Shade Cloth Co.* 117 N. Y. Supp. 1081; *Milwaukee, etc., R. Co.* v. *Kellogg,* 94 U. S. 469, 475; *Missouri Valley Bridge Co.* v. *Nunnemaker,* 209 Fed. 32; *National Fireproofing Co.* v. *Crutchley,* 44 App. D. C. 271; *N. E. R. Co.* v. *Conroy,* 175 U. S. 323, 331; *O'Brien* v. *American Dredging Co.* 53 N. J. L. 291, 297; *O'Hara* v. *Brown Hoisting Mach. Co.* 171 Fed. 394; *Patton* v. *T. P. R. Co.* 179 U. S. 658; *Penn. R. Co.* v. *Forstall,* 159 Fed. 893; *Pleasants* v. *Fant,* 22 Wall. 116, 122; *R. Co.* v. *Jackson,* 65 Fed. 50; *Randall* v. *Baltimore & O. R. Co.* 109 U. S. 478; *Sanborn* v. *Baltimore & M. R. Co.* 76 N. H. 527; *Seaboard Air Line* v. *Horton.* 233 U. S. 492, 501; *Sprow* v. *Staples,* 38 App. D. C. 219; *Stork* v. *Charles Stolper Co.* 127 Wis. 318, 106 N. W. 841; *Texas & P. R. Co.* v. *Barrett,* 166 U. S. 619; *Texas & P. R.* v. *Archibald,* 170 U. S. 665, 672; 4 Thomp. Neg. 2d ed. sec. 4708; *Thompson-Starrett Co.* v. *Wilson,* 39 App. D. C. 211; *Thompson-Starrett Co.* v. *Warren,* 38 App. D. C. 310; *Tittus* v. *Bradford, B. & K. R. Co.* 136 Pa. 618; *Union P. R. Co.* v. *Herbert,* 116 U. S. 642, 647; *Union P. R. Co.* v. *Peterson,* 162

U. S. 346, 353; *United States Exp. Co.* v. *Ball,* 36 App. D. C. 269; *Wachsmuth* v. *Electric Crane Co.* 118 Mich. 275; *Walazewski* v. *Schoknecht,* 127 Wis. 376; *Washington Asphalt Block & Tile Co.* v. *Mackey,* 15 App. D. C. 410; *Washington R. Co.* v. *McDade,* 135 U. S. 554; *Washington S. R. Co.* v. *Smith,* 45 App. D. C. 200; *Williams* v. *Citizens S. B. Co.* 113 N. Y. Supp. 616.

Mr. Justice Robb delivered the opinion of the Court:

That the erection of this structural iron-bridge span and the removal of the old span, a mass of structural iron 140 feet long, 18½ feet high, and weighing many tons, was an undertaking requiring expert knowledge and supervision, may not be gainsaid. That such was the view of the defendant corporation is apparent from the fact that it maintained an experienced foreman to supervise and direct the work. Certainly the president of the company, who had general supervisory power over work in this District, did not undertake personally to direct operations; for, as we have seen, in the month that Mr. Hoffman had charge Mr. White visited the work not more than three or four times. Hoffman, therefore, was the direct representative of the defendant. He had complete charge of the men, hired, paid, and discharged them. These facts, taken in connection with the character of the undertaking, which undoubtedly was such as to make the work dangerous without supervision, warrant the conclusion that Hoffman was a vice principal. *Collins* v. *John W. Danforth Co.* 36 App. D. C. 592. "When the business of the master or employer," said the court in *Northern P. R. Co.* v. *Peterson,* 162 U. S. 346, 40 L. ed. 994, 16 Sup. Ct. Rep. 843, "is of such great and diversified extent that it naturally and necessarily separates itself into departments of service, the individuals placed by the master in charge of these separate branches and departments of service, and given entire and absolute control therein, may properly be considered, with respect to employees under them, vice principals and representatives of the master as fully and as completely as if the entire business of the master were placed by

him under one superintendent." The work here was a detached unit, complete in itself, which from the nature of things necessitated supervision by the corporation through some representative. The corporation chose Mr. Hoffman for that duty, and, when he left, placed in control the next in rank, Mr. Hoover. Whatever may have been the status of Adam Hoffman, Hoover certainly represented the defendant after William Hoffman left.

It of course is not denied that it was defendant's duty to provide for the plaintiff a reasonably safe place in which to work, but defendant contends that this duty was performed when proper mauls and proper handles were furnished the men. While there is some dispute under the evidence as to whether wedges for the handles were available, we do no consider this question material under our view of the case; for though it may be conceded that where an employer furnishes such a simple tool as a hammer or maul he is not expected to superintend its use (*Thompson-Starrett Co.* v. *Wilson,* 39 App. D. C. 211), and that he is not responsible for minor or simple repairs if he has furnished proper materials therefor (*American Bridge Co.* v. *Seeds,* 11 L.R.A.(N.S.) 1041, 75 C. C. A. 407, 144 Fed. 605; *O'Hara* v. *Brown Hoisting Mach. Co.* 96 C. C. A. 350, 171 Fed. 394; *Sanborn* v. *Boston & M. R. Co.* 76 N. H. 523, 86 Atl. 157; *Martin* v. *Highland Park Mfg. Co.* 128 N. C. 264, 83 Am. St. Rep. 671, 38 S. E. 876, there is evidence in the present case that the master, through its representative Hoover, deliberately directed and thereby became responsible for the use of a defectively dangerous tool. While the plaintiff assumed the risks "normally and necessarily incident to the occupation" in which he was engaged (*Seaboard Air Line R. Co.* v. *Horton,* 233 U. S. 492, 58 L. ed. 1062, L.R.A.1915C, 1, 34 Sup. Ct. Rep. 635, Ann. Cas. 1915B, 475, 8 N. C. C. A. 834), it was not to be assumed that his employer needlessly would subject him to a risk of an altogether different sort. Had Galloway slipped and fallen and injury resulted to the plaintiff, it well might have been said that plaintiff had assumed that very risk, because from the nature of things he must have known that such an occurrence was possible; but, knowing that it was his employer's duty to exercise reasonable care to pro-

vide him a reasonably safe place in which to work, plaintiff certainly had no reason to expect that such employer deliberately and needlessly would subject him to the risk incident to the use of this defective tool. *Missouri Valley Bridge & Iron Co. v. Nunnemaker,* 126 C. C. A. 174, 209 Fed. 32. Hoover, according to the testimony of three witnesses, not only ordered the use of this tool in its defective condition in the morning, but deliberately stood by during the entire day, after the reasonableness of Galloway's warning must have been demonstrated even to him, without countermanding the order. In other words, the jury might have found under the evidence not only that Hoover was directly responsible for the use of this tool in the morning of the day of the accident, when any reasonable man would have known that its use was dangerous to those working below, but that he continued that use after its dangerous character had been fully demonstrated to him. This, therefore, is not a case where a simple tool has been furnished an employee and that employee, by carelessly failing to make a simple repair with material at hand, has injured a fellow employee, but rather is it a case where an employer has deliberately directed the use of a defective tool by one employee to the injury of another and innocent employee.

Plaintiff was injured in August of 1915 and soon thereafter brought this suit. At the trial motion for a directed verdict was not made until all the evidence was in, when the trial justice, notwithstanding that in his remarks to the jury he expressed the view that the legal questions involved were "so close that the court of appeals ought to pass upon them," and notwithstanding that the plaintiff requested that the case be submitted to the jury for a special finding, directed a verdict for the defendant. That action has necessitated a trial *de novo* at great expense to the parties, has delayed the ultimate disposition of the case for a very considerable time, and incidentally added to the already congested condition of the trial calendar and this notwithstanding that rule 52 of the court below specifically provides for the taking of such a verdict, which rule twice has been referred to with approval by this court. *McNamara* v. *Washington Terminal Co.* 37 App. D. C. 384; *Burke* v. *Dis-*

*trict of Columbia,* 42 App. D. C. 438. In the *McNamara Case,* where the situation was similar to that here, Mr. Justice Van Orsdel, speaking for the court, said: "Rule 52 of the supreme court of the District of Columbia provides for just such an emergency as confronted the trial court in this case. No injury nor injustice could have been inflicted upon the defendant had this course been pursued. As it is, the entire expense and delay attendant upon a new trial will again have to be incurred. No valid excuse is apparent why, in a case like this, the rule should not be followed. Courts should be eager to avail themselves of every opportunity to facilitate the despatch of business, curtail costs, and discourage litigation, when it can be accomplished with equal justice to all concerned." The rule should have been followed in this case.

The judgment is reversed, with costs, and the case remanded for a new trial. *Reversed and remanded.*