Hillsborough, ⎰
Nov. 5, 1924. ⎱

### DAVID THALL *v.* W. H. McELWAIN COMPANY.

Evidence that an appliance in defendant's factory was defective both in its original construction and from wear and tear; that the defendant had no system of inspecting such appliances, but waited until they broke down or wore out before repairing them; and that the plaintiff, an employee of the defendant, while using the appliance in the customary manner in the course of his employment, and in ignorance of the lack of inspection, was injured by reason of its defective condition, justifies a finding that the injury was due to the negligence of the defendant, either in furnishing the plaintiff an unsuitable appliance for doing his work, or in failing to give him due warning of the danger, or both.

CASE, for negligence under the employers' liability law. (Laws 1911, c. 163, s. 2.)    A jury gave the plaintiff a verdict.    Transferred by *Branch*, J., on the defendant's exception to the denial of a nonsuit.    The opinion states the facts.

*Osgood & Osgood* (*Mr. Anson G. Osgood* orally), for the plaintiff.

*Warren, Howe & Wilson* (*Mr. Charles B. McLaughlin* orally), for the defendant.

ALLEN, J.    The exception to the denial of a nonsuit is treated as though taken to the denial of a directed verdict, a motion for which does not appear to have been made, under the rule that the right to a nonsuit is lost if evidence covering the deficiency is introduced by either side before the trial closes.    *Gagnon* v. *Dana*, 69 N. H. 264.

The plaintiff was a cutter in the defendant's factory.    In the course of his work it was the practice to have two trucks or boxes near his machine, one to receive the soles he cut and one for the waste.    The sides of the box for waste provided when he was hurt were of soft wood boards one-half to three-quarters of an inch thick and nailed to posts at the corners.    It was four feet long and thirty inches in width and height.    It rested on four wheels, one at the middle of each side and one near the middle of each end.    The wheel fastenings were set, rather than swiveled, so as to give them motion only in line with the length of the box.    The boxes were stationed near the machine in a space between it and another machine, and the location was such that when the boxes were placed in their usual arrangement, it was necessary, on account of the small amount of room, on taking them

away to pull one end of the box for waste crosswise so as to get it in position to push or pull it out of the space in the direction of its length. The plaintiff usually had nothing to do with the boxes but understood their construction and the way they were handled. When hurt he was working on a special order. In completing the work it was necessary at the time to get the box for waste out of the way of the box containing soles, so the latter could be moved to some other place. No helper who usually moved the boxes being on hand, the foreman's assistant told him to do it. In attempting to pull the waste box around into position for pushing or pulling it in the line of its length, he took hold of an upper side board near one end and pulled. The board and its fastening were defective, a piece broke off and the plaintiff was thrown back and hurt.

The contention that there was no evidence of the defendant's negligence is met by the evidence that the box was defective both in construction and in repair. Some boxes in use in the defendant's factory had swiveled wheels, admitting of their taking the line of a crosswise pull, and some had metal straps around the top. There was evidence that the box under consideration was defective from wear and tear, and that the defendant had no system of inspecting the boxes but waited until they broke down or gave way before repairing them. The evidence that the plaintiff handled the box in a customary manner and that the cutters in the absence of helpers were accustomed to handle them, aside from the special order given the plaintiff when hurt to handle his, justifies a finding that the defendant was negligent either in furnishing the plaintiff an unsuitable appliance for doing his work or in failing to give him due warning of the danger so the box could be handled safely, or both.

The board which broke was worn, and because of its worn condition the piece which broke off left some of the nails in the post to which it was fastened. The inferences that this defect was a natural result of the strain put on the boxes the way they were usually handled with the heavy loads they carried and was one to be anticipated and discoverable by reasonable inspection are not conjectural.

In this respect the case is similar to Casey v. Company, 79 N. H. 42, rather than Cunningham v. Spaulding, 80 N. H. 335, in which the defect was so extraordinary as not to be subject to anticipation and thus call for inspection.

The case of Sanborn v. Railroad, 76 N. H. 523, if authority under the employers' liability law, is not in point. Here the appliance was not furnished the employees for them to look after and take care of.

The boxes when they got broken were sent to the repair shop to be mended, and there was no evidence particular employees had their repair in charge. Their repair being no part of the employees' work, the failure to repair is chargeable to the employer. Furthermore, in the Sanborn case the employee who made the repairs had the duty of inspection, while here there was no inspection assigned to anyone. Also, in that case the plaintiff knew of the lack of inspection, while here it does not appear he did.

Moreover, if the boxes were inadequate to meet the strain on them, it was for the jury to say whether others such as were in use and subject to less strain or of stronger construction should not have been solely furnished.

The evidence of the plaintiff's negligence only tended to prove it.

*Exception overruled.*

All concurred.